Argued February 24, reversed and remanded March 29, 1921.

## LEHMAN *v.* KNOTT.

(196 Pac. 476.)

**Evidence—Expert not Allowed to Draw Inferences of Fact.**

1. An expert is not allowed to draw inferences or conclusions of fact from the evidence, and his opinion should be exact upon a hypothetical statement of fact.

**Evidence—Party Entitled to Opinion of Expert on Any Facts Supported by Testimony.**

2. It is the privilege of counsel to assume any state of facts which there is any testimony tending to prove, and to have the

---

1. Who are experts and in what cases expert testimony is admissible, see note in 66 **Am. Dec.** 228.

opinion of the expert based on the facts assumed, but the testimony should tend to establish the facts ·embraced in the question, and if the hypothetical question is clearly exaggerated and unwarranted by any testimony in the case, an objection to it should be sustained.

### Evidence—Form of Hypothetical Question.

3. The form of a hypothetical question, whether it states facts, or puts facts hypothetically, or refers to the testimony of witnesses as being true, should be shaped so as to give the witness no occasion or opportunity to decide upon the evidence.

### Evidence—Hypothetical Questions Should not Seek Opinion on Merits.

4. Hypothetical questions are clearly improper if they directly seek the opinion of the witness on the merits of the case.

### Evidence—Opinions of Physicians Admissible as to Proper Medical Treatment.

5. In malpractice case the question of whether the physician had adopted the proper treatment is one in which the opinions of medical men may be received in evidence, and they may state whether in their opinion the treatment was improper or not, and whether it was in conformity with the rules and practice of the profession.

### Evidence—Opinion Evidence Rule Concerning Conclusions on Merits not Absolute.

6. As the opinion evidence rule is intended to provide against the danger of invasion of the province of the jury, the court should, as far as possible, exclude the inference, conclusion or judgment of a witness as to the ultimate fact in issue, even though the circumstances presented are such as might warrant a relaxation of the rule excluding opinions but for this circumstance, but the rule is not absolute, for it frequently occurs that the only possible or practicable method of making proof of the fact in issue is by means of opinion evidence.

### Evidence—Question to Physician Held Improper as Invading Province of Jury.

7. In malpractice case it was error to allow plaintiff to ask expert witness whether application of side splints to broken wrist was "unskillful and negligent," as the expert's opinion would leave little or nothing for the jury to determine, as improper treatment by a surgeon might be due to an error in judgment of a skillful surgeon, honestly and carefully exercised, and not constitute negligent treatment.

---

3. Necessity that hypothetical question to witness contain all evidence on point in issue, see note in 18 Ann. Cas. 646.

4. Whether expert witness may give opinion as to the ultimate fact, see note in Ann. Cas. 1914B, 191.

**Physicians and Surgeons—Honest Error in Judgment Does not Constitute Negligent Treatment.**

8. Improper treatment by a surgeon might be due to an error in judgment of a skillful surgeon honestly and carefully exercised and not constitute negligent treatment.

**Evidence—Physician Competent to Give Opinion, Although Never Treating a Similar Case.**

9. The fact that a physician skilled in medicine and surgery had never treated a broken wrist with infection would not disqualify him from giving his opinion as to the correct manner of applying splints to a broken wrist with infection.

**Evidence—Court Erred in not Permitting Medical Expert to Testify as to Effect of Sloughing upon Broken Radius Bone.**

10. In malpractice case, where there was a broken wrist and infection and a discharge by the infection, *held* that court erred in not permitting expert witness for defendant to testify as to the effect that sloughing would have upon the radius bone and its ability to unite.

**Trial—Instruction in Malpractice Case Held Outside of Case.**

11. In a malpractice case, where it was alleged that defendant failed to exercise requisite skill and knowledge, and not that defendant did not possess requisite knowledge and skill, court erred in charging, "A surgeon must inform himself as to the facts and circumstances of the particular case under his investigation, and, if he fails to do so, or fails to possess the knowledge or experience and skill to handle such a case, and a party, by such failure is injured, then the party injured is entitled to recover," since it added to the issues and might lead the jury outside the case and to consider the qualifications of defendant.

**Physicians and Surgeons—Instruction in Malpractice Case Held Within the Complaint.**

12. Where plaintiff had a broken wrist, an instruction that it was the duty of a surgeon to use reasonable care and diligence in undertaking to reduce the fracture and place the bones in apposition was not open to the objection that there was no claim in the complaint that defendant was careless in reducing the fracture, or that he did not use proper appliances in the proper manner, where plaintiff alleged that the bones were never put into nor kept in apposition, which refers to the reducing of the fracture and the use of appliances to keep the bones in apposition.

From Clackamas: JAMES U. CAMPBELL, Judge.

8. Liability of physician for making wrong diagnosis, see note in Ann. Cas. 1917D, 708.

9. Competency of physician to testify as expert in respect to wound or injury where he has not had similar case, see note in 14 Ann. Cas. 137.

Department 2.

This is an action for damages against the defendant, George C. Knott, a physician and surgeon, for negligence in setting and treating the bones of plaintiff's wrist. The cause was tried by the court and a jury, and a verdict rendered in favor of plaintiff for the sum of $750. From a consequent judgment defendant appeals.

The plaintiff, Lina Lehman, while running from a deer near Wolf Creek, in Douglas County, about 4 o'clock P. M. on November 8, 1918, fell and sustained a fracture of the left wrist. Both the ulna, the wrist bone back of the little finger, and the radius, the large wrist bone back of the thumb, were broken. The bone protruded horizontally through the flesh and became infected from contact with the soil. At that time the plaintiff was living about five or six miles from Wolf Creek and about ten miles from Glendale. Defendant lived in Glendale, a town of about 750 inhabitants, where he had been located about five years, practicing his profession as a physician and surgeon. He is thirty-eight years of age, is a graduate of the College of Medicine of the State University of Iowa, and had followed hospital work for nine months in the University of Iowa. He is also a graduate of a College in Cedar Rapids. Prior to moving to Glendale, the defendant had practiced his profession in Yoncalla, Oregon, for a period of five years, and had done eye, ear, nose, and throat work for a period of four months at Ashland, Oregon. The defendant had been the physician for the Southern Pacific Company at Glendale for a number of years, and also represents the State Accident Commission at that place. He had known the plaintiff since January, 1915, when it appears he treated her for cancer, and finally per-

formed an operation on her for cancer. Soon after
the plaintiff received her injury she telephoned to
the defendant at Glendale. Dr. Knott took such
bandages, anesthetics and splints as he had available,
and went in a car to the place where plaintiff was
living, reaching there about 6 P. M. When he reached
the home, which was in an out-of-the-way district in
the mountains, the wrist was bleeding. Cloths had
been wrapped around the wrist at the place of the
break in order to stop the bleeding. The ends of
the bones were covered with dirt and mud. The de-
fendant testified that he cleaned the ends of the bones,
gave the patient morphine to quiet the pain, used
tincture of iodine for the purpose of allaying pos-
sible infection, placed the bones in apposition as best
he could, put on anterior and posterior splints, and
placed a gauze drain in the wound. The defendant
then desired the plaintiff to go to the hospital at
Glendale, but she was in a very much weakened condi-
tion, and was not able to make the trip. He offered to
take her in his car, but as she was unable to stand
the trip, he asked her to come to his hospital at Glen-
dale not later than Sunday, the accident having
occurred on Friday. Plaintiff came to the office of
defendant on Sunday, whereupon the defendant ex-
amined the left wrist with his X-ray machine, and
found that the bones were not in correct apposition,
so he had the plaintiff go to the surgery of the hos-
pital, where an anesthetic was administered by the
wife of the defendant, a trained nurse, and the bones
were put in apposition, and splints were applied, as
he states, the same as before. Dr. Knott noticed a
fetid odor at that time. Bandages were wrapped
around the splints, except at the opening in the splint,
and at this place a gauze drain was inserted for the

purpose of absorbing the pus. The wound was also swabbed out with iodine. Yucca board splints three and one-half inches in width were used. Defendant testified that he dipped the splints in hot water in order to soften them and cause them to be pliable. A duplicate of these splints is in evidence. He testified that these splints were placed entirely around the arm, with the exception of the place where the wound discharged, and that at such place an opening was cut in the splint in order to permit the dressing of the wound and its discharge.

The gist of the negligence is alleged as follows:

"That said defendant so negligently, carelessly and unskillfully treated said plaintiff that said bones were never brought into nor kept in apposition, as they could and should have been set by this defendant, all without fault on the part of plaintiff."

The answer puts the complaint in issue.

At the close of plaintiff's testimony the counsel for defendant moved the court for a judgment of nonsuit. At the close of the case defendant requested the court to instruct the jury to return a verdict in favor of defendant. The complaint does not allege in what particular defendant was negligent in the treatment of plaintiff. The question propounded to the expert witnesses reads as follows:

"On the 8th day of November, 1918, the plaintiff sustained a fracture, an injury to her left hand, what is commonly known as a Colles' fracture, the ulna bone and the radius were fractured at the point; there was also a compound fracture; this injury happened at 4 o'clock in the afternoon; the defendant, Dr. George C. Knott, was called to take charge of the case; he arrived about two hours thereafter; he put on what is known as posterior and anterior splints when setting the bone; two days after that the plaintiff went to his office at Glendale, and he looked at

the wrist through a fluoroscope, and then discovered that the .bones were not set, were not in apposition. He then administered an anesthetic, and attempted to reset the bones; after that operation he put on side splints, one on each side of the left wrist; cut a hole in the outer splint, and wrapped the splint up, the arm, with a bandage. Would you consider the application of side splints in a case of that character as a proper, usual, and customary method of applying splints to an injury of that character?"

Counsel for defendant objected to the question, at various times, as incompetent, irrelevant, and immaterial, and for the reason that all of the elements testified to were not present in the hypothetical question; that the element of time claimed that these splints were changed was not given; that no question about the infection was submitted to the witness; that no proper foundation had been laid for a hypothetical question, and it was not within the issues of the case; that the question was not properly put; and that the place and conditions under which the operation was performed were not mentioned. The objections were overruled.

Dr. M. C. Strickland, a witness for plaintiff, who examined plaintiff's wrist and the X-ray plate, testified as to the condition of plaintiff's wrist that there had been a fracture; that the ulna bone appeared to be in apposition; that there had been a compound fracture; that the flesh had been lacerated and there had been a bad wound; and that the radius bone was not in apposition. In answer to the formal question the doctor stated:

"A. Well, it is hard to answer that question for any physician, because he don't know the entire circumstances that were present at that time. Of course ordinarily in treating that case the bones would be adjusted and fixed with anterior and posterior splints,

100 Or.—5

but the conditions that existed there at that time might have necessitated, as we very often have necessity for breaking them over, and so on, and that condition I don't know anything about. You really have to size a condition up of that kind, unless a man has it in actual attendance at the time, but the anterior and posterior splint for fixation is the proper thing.

"Q. What do you mean by anterior and posterior splints?

"A. The splints that go on the inside and outside of the arm.

"Mr. Senn: We move to have the witness' testimony stricken out, because it is not responsive, and it is not a proper answer to a hypothetical question. I take it that the only thing a witness can answer in a case like this is whether or not such a state of facts constitute proper practice under all the circumstances."

Dr. Strickland further deposed in part thus:

"Court: The general rule in these kind of cases is that one expert cannot testify as to the skillfulness or nonskillfulness of another expert. The question for the jury is as to the negligence.

"Q. Assuming the facts as I have given them to be true in this case, would you say that the application of side splints was an unskillful and a negligent application of splints?

"Mr. Senn: I object to that as incompetent, irrelevant and immaterial and no proper foundation laid, and all the elements are not present.

"Court: Objection overruled.

"A. If I knew the exact condition of the wrist at that time I could give you a much more definite answer. That is the trouble. Ordinarily, under favorable conditions, I wouldn't say it is not the proper treatment, but what was at that time I can't say. But ordinarily I would not treat it in that way."

Dr. C. H. Meisner, an expert witness for plaintiff, examined plaintiff's wrist and the X-ray photograph, and testified as to the condition of her wrist, to the effect that "the end of the ulna has become united at the seat of the fracture, but the end of the radius has not. The end of the radius is to one side." In answer to the former hypothetical question he stated:

"It depends on the fracture. * *

"Q. Would you consider the application of side splints, assuming those facts to be true, as the proper customary, and usual way of putting on splints?

"A. That would depend upon the condition of the fracture. You would have to see this fracture to tell just what kind of a splint to apply. * *

"Q. Would the application of side splints be proper in cases of this character?"

An objection to the question having been overruled, he answered: "I do not use side splints, if that is an answer to your question." He further stated that he had never seen them used.

Dr. J. W. Norris testified that he had examined the X-ray photograph of plaintiff's wrist, which is an exhibit in evidence. He then deposed as follows:

"Q. You made an examination of plaintiff's left arm, and of the X-ray picture. What would you say as to the condition of the plaintiff's ulna and radius bones of the left hand?

"A. Well, the radius has evidently been fractured, probably some fracture around the margin of the articulation of the lower, or distant end of the radius. And the ulna has been displaced, or rather the end of the wrist upon the ulna. It is not the ulna, but rather as a matter of fact it is the end of the wrist displaced upon the ulna. The ulna is displaced laterally also, so as to widen the wrist here at this point [indicating]. And the ulna is also displaced from its articulation with the radius.

"Q. How far out of alignment is the radius, Doctor?

"A. Out of line?

"Q. Out of alignment. Out of apposition.

"A. Oh, I didn't calculate the distance.

"Q. Is it considerable?

"A. Considerable; yes, sir. Considerable. Half an inch, or such matter.

"Q. That would cause the deformity which is evident in plaintiff's left hand?

"A. It is causing a good deal of it, but the deformity is aggravated by a displacement laterally of the ulna. What I mean by laterally is the ulna being displaced in this direction [indicating]. To the ulna side of the arm."

Dr. Norris was propounded the hypothetical question to which the objections were made and overruled. The doctor then inquired:

"A. These splints were wood, the material of these splints was wood?

"Q. Yes, wood.

"A. And the anterior and posterior splints omitted?

"Q. Yes, Doctor.

"A. I have to answer this question?

"Court: Yes.

"A. No, I don't think it is good work.

"Q. What do you mean, Doctor, when you say you don't think it is good work?

"A. I do not think it is a proper method of treating a wound."

Mrs. Lehman, the plaintiff, testified in regard to the manner in which the splints were placed upon her wrist, to the effect that the doctor had them on the side of the wrist, and they had a hole in the splint on the side to treat the sore; that the splints were soft; and that the distance between the two splints on the top of the wrist was about a quarter of an inch and about the same on the bottom.

Mrs. Sylvia Yencer, plaintiff's daughter, testified on behalf of plaintiff that the splints were placed upon the sides of the wrist. She was sure of that "because the hole was in the board that was on the side, and that the splints would not be wide enough to put on the top and curve down so as to cut the hole on the side."

Dr. Knott, defendant, testified in part, to the purport that when he first set the wrist at the home of plaintiff he told her to come to the hospital as soon as possible, not later than Sunday. She came Sunday morning.

"A. At first I took her to the X-ray room and examined her with the fluoroscope and found that the bones were not in correct apposition, so we took her into the surgery and withdrew, or took off the bandages and splints, and at that time already there was a fetid odor.

"Q. What did that mean to you?

"A. It meant there was an infection already; the infection that had been caused by the fall was developed, and pus was present. Then we took splints and again put on the same splints we used previously, carving again the holes in the side of the splint so it could be taken care of—that is, the discharge could be taken care of—and put a ball of cotton into the hand, and, when I had put these splints on, carried my bandage abruptly from the point above this splint to the point below it, on the radial side, so as to leave the hole open. Then I took a gauze dressing over this, and put a small bandage around that, that could be removed, so we could treat it. By this dressing being put here that was removable it would prevent the splint from becoming foul, and also allow us to take care of the bandage at any time.

"Q. What did you do with iodine?

"A. The same thing I had previously; went to the bottom with a swab of iodine.

"Q. Did you put any drain in the wound?
"A.. The same as before, a simple gauze drain."

REVERSED AND REMANDED.

For appellant there was a brief with oral arguments by *Mr. F. S. Senn* and *Mr. Grant B. Dimick.*

For respondent there was a brief over the names of *Messrs. Latourette & Latourette* and *Mr. George C. Brownell,* with an oral argument by *Mr. Earl C. Latourette.*

BEAN, J.—1-6. As an expert is not allowed to draw inferences or conclusions of fact from the evidence, his opinion should be exact upon a hypothetical statement of fact. It is the privilege of counsel to assume any state of facts which there is any testimony tending to prove, and to have the opinion of the expert based on the facts assumed. But the testimony should tend to establish the facts embraced in the question. If the hypothetical question is clearly exaggerated and unwarranted by any testimony in the case, an objection to it should be sustained: Rodgers on Expert Testimony (2 ed.), § 27. The form of the hypothetical question, whether it states facts, or puts facts hypothetically, or refers to the testimony of witnesses as being true, should be shaped so as to give the witness no occasion or opportunity to decide upon the evidence. Hypothetical questions are clearly improper if they directly seek the opinion of the witness on the merits of the case: Rodgers on Expert Testimony (2 ed.), § 28. In a malpractice case the question whether a physician has in a given case adopted the proper treatment is one in which the opinions of medical men may be received in evidence, and they may state

whether in their opinion the treatment was proper or not, whether it was in conformity with the rules and practice of the profession: Rodgers on Expert Testimony (2 ed.), § 64; 22 C. J., p. 663, § 758; *Heath* v. *Glisan,* 3 Or. 64; *Hoener* v. *Koch,* 84 Ill. 408; *Taylor* v. *Kidd,* 72 Wash. 18 (129 Pac. 406). As the opinion evidence rule is intended to provide against the danger of invasion of the province of the jury, a court should, as far as possible, exclude the inference, conclusion, or judgment of a witness as to the ultimate fact in issue, even though the circumstances presented are such as might warrant a relaxation of the rule excluding opinions but for this circumstance. But the rule is not absolute, for it frequently occurs that the only possible or practicable method of making proof of the fact in issue is by means of opinion evidence: 22 C. J., p. 502, § 597; Jones on Evidence (2 ed.), p. 465, § 372.

7, 8. It was error to allow the plaintiff to ask Dr. Strickland whether the application of side splints was "unskillful and negligent." This was done over the objection and exception of defendant's counsel: *Pointer* v. *Klamath Falls L. Co.,* 59 Or. 438 (117 Pac. 605, Ann. Cas. 1913C, 1076); *Porges* v. *Jacobs,* 75 Or. 488 (147 Pac. 396); *Marks* v. *Columbia County Lbr. Co.,* 77 Or. 22, 26 (149 Pac. 1041, Ann. Cas. 1917A, 306); *Pyle* v. *Pyle,* 158 Ill. 289, 299 (41 N. E. 999); *Elliott* v. *Russell,* 92 Ind. 526, 530; 11 R. C. L., p. 616, § 38. The distinction between improper treatment and negligent treatment is not as broad as it is vital. Improper treatment by a surgeon might be due to an error in judgment of a skillful surgeon honestly and carefully exercised, and not constitute negligent treatment: *Dishman* v. *Northern Pac. Beneficial Assn.,* 96 Wash. 182 (164 Pac. 943). The opinion of

the expert, Dr. Strickland, left little or nothing for the determination of the jury. It was undisputed that two soft pliable wood splints three and one-half inches in width were applied by Dr. Knott to plaintiff's wrist, and encircled the same, except for a quarter of an inch on the top and bottom, as Mrs. Lehman stated, or about one-half inch as estimated by another member of her family. It would seem that, in order for the opinions of the experts to be of any assistance to the jury, the condition in which the splints were applied to the arm should have been described. This point was not specifically called to the attention of the trial court. The plaintiff was content to call them "side splints," and one of the doctors inquired if the anterior and posterior splints were omitted, and was informed by counsel for plaintiff that they were. If the splints practically encircled the wrist, we fail to see that it would be very material whether they were termed side splints, or anterior and posterior splints. While the place where Dr. Knott practiced and treated plaintiff was mentioned, the practice about which the experts were interrogated was in no way confined to the practice in similar localities: 21 R. C. L., p. 385, § 30.

The testimony in regard to the application of the splints was practically the only testimony indicating negligence on the part of the defendant, and the testimony of the experts was very material. We think it precluded the granting of the motion for a nonsuit, or the request for a directed verdict. It is unnecessary to speculate what the testimony would have been if all of the material elements had been called to the attention of the experts.

9. Error is predicated upon the refusal of the court to strike out the testimony of Dr. Welch upon

the ground that it showed no qualification to answer the hypothetical question, for the reason that he had never treated a fracture of this nature with infection. The point is not well taken. It appears the doctor is skilled in medicine and surgery. The fact that he had never treated a case exactly like the one in question would not disqualify him from giving his opinion. The objection would only go to the weight of his testimony.

10. Error is predicated upon the refusal of the court to permit Dr. Mount, witness for defendant, to testify as to the effect that sloughing would have upon the radius bone and its ability to unite. The objection appears to have been for the reason that there was no evidence in the case that there was any sloughing. We understand the question to pertain to the discharge caused by the infection, which was quite material, and we think the doctor should have been permitted to explain the matter. It was the theory of the defendant that the sloughing prevented a proper union of the parts of the bone.

11. Complaint is made of the instruction of the court to the jury as follows:

"A surgeon must inform himself as to the facts and circumstances of the particular case under his investigation, and if he fails to do so, or fails to possess the knowledge or experience or skill to handle such a case, and a party, by such failure is injured, then the party injured is entitled to recover."

It was not alleged that the defendant did not possess requisite knowledge and skill to treat the plaintiff. The gist of the complaint is that he failed to exercise such skill and knowledge. The lack of knowledge of the defendant was also referred to by the court in stating the issues to the jury. We think

the instruction adds to the issues, and might lead the jury outside the case and to consider the qualifications of the defendant: *Engstrom* v. *Wise Dental Co.*, 97 Or. 634 (187 Pac. 187, 188); *Mayo* v. *Wright*, 63 Mich. 32 (29 N. W. 832).

12. Error is also asserted upon the following portion of the charge:

"It is the duty of a surgeon in cases of this kind to use reasonable care and diligence, first in undertaking to reduce the fracture and to place the bones in apposition; second, in using proper appliances in a proper manner, by the means within his command, and as a prudent and careful surgeon, situated in like circumstances, under like conditions and similar localities would do; and, unless he does these things, he lays himself liable for ensuing damages that may result from such want of skill and improper treatment and care."

The objection is that there is no claim in the complaint that defendant was careless in reducing the fracture, or that he did not use proper appliances in a proper manner. Plaintiff complains that the bones were never put into nor kept in apposition, which refers to the reducing of the fracture and the use of appliances to keep the bones in apposition. The instruction is not objectionable except as to the reference to the "want of skill."

The plaintiff attempts to criticise Dr. Knott for the reason that he did not take an X-ray photograph of her wrist and inform her of the condition of the same. Mrs. Lehman testified that after she returned home from Glendale she saw Dr. Knott at the store, and he examined her arm and said, "It is pretty stiff and pretty crooked." It therefore seems that the doctor informed her as plainly as he could in regard to the true condition of her wrist. The un-

satisfactory result of the treatment was attempted to be emphasized by the examination of plaintiff's expert witnesses. The requirements of the exercise of the skill of a surgeon and his liability for the result are plainly delineated in *Hills* v. *Shaw,* 69 Or. 460 (137 Pac. 229), in the opinion by Mr. Justice BURNETT, and we do not think it necessary to make further comments upon the matter: See, also, *Merriam* v. *Hamilton,* 64 Or. 476 (130 Pac. 406).

The judgment of the trial court is reversed, and the cause remanded for such further proceedings as may be deemed proper, not inconsistent herewith.

REVERSED AND REMANDED.

BURNETT, C. J., and JOHNS, J., concur.

BROWN, J., concurs in the result.