Argued March 30, affirmed May 24, 1921.

EMERSON *v.* LUMBERMEN'S HOSPITAL ASSN.

(198 Pac. 231.)

**Physicians and Surgeons—Not Negligence, as Matter of Law, to Take Injured Man on Stretcher in Railroad Motor-car from Logging Community to Hospital.**

1. Where plaintiff's minor son, whose leg was practically severed by the wheel of a logging train, died while being taken to defendant's hospital at A., it could not be held as a matter of law, in the absence of allegation and proof of negligence or unskillfulness, that it was improper under the circumstances to take him on a stretcher in a railroad motor-car from a sparsely settled logging community to a hospital.

**Evidence—Physician may Testify as to Proper Treatment, but Should be Informed What Attending Physician Did and Failed to Do.**

2. In a malpractice case the opinion of medical men may be received in evidence as to, what would be the proper treatment, but they should be informed as to what treatment was given the patient, or what the physician in attendance failed to do.

**Physicians and Surgeons—Not Liable for Error of Judgment—Death of Patient not Evidence of Neglect.**

3. If a regularly licensed physician with reasonable diligence employs the skill of which he is possessed in treating a surgical case, he is not liable for an error of judgment, and the fact that the patient dies is not evidence of neglect.

---

1. As to degree of care and skill which a physician and surgeon must exercise, and his liability for negligence and malpractice, see notes in 93 Am. St. Rep. 657; 1 Ann. Cas. 21, 306; 14 Ann. Cas. 605; 37 L. R. A. 830.

**Physicians and Surgeons—Nonsuit Properly Granted Where Evidence Failed to Show Malpractice.**

4.   Where, in a malpractice case, there was an entire lack of testimony as to whether or not defendant adopted and applied the proper method of treating deceased, or to show what he failed to do, a motion for a nonsuit was properly granted.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.

This is an action for damages on account of the death of plaintiff's minor son, Alexander Emerson, alleged to be due to the negligence of the defendants in caring for him after he had been injured on a logging railroad in Columbia County, Oregon. The complaint alleges the incorporation of the defendant, Lumbermen's Hospital Association, with its principal offices at the City of Astoria; that it was engaged in operating hospitals for hire and profit; that defendant B. L. Sears has been practicing medicine and surgery at Neverstill, Columbia County, Oregon, and was employed by the defendant Lumbermen's Hospital Association as its representative physician in charge of its business in Columbia County; that the Kerry Timber Company was engaged in logging, and manufacturing lumber in the vicinity of Neverstill, and transporting logs by rail to Kerry; that the Hospital Association had a contract with the Timber Company, whereby the company should collect from its employees approximately fifty cents per month as hospital fees to be paid to the Hospital Association in consideration of which the association agreed to furnish material and surgical attention to all persons becoming ill or injured in or about the logging and milling operations during the period for which such fees were paid; that during March, 1918, plaintiff's son was employed by the Kerry Timber Company and had paid the hospital fees for that month; and that

on March 28, 1918, the son left the employment and the Kerry Timber Company issued to him a time statement, agreeing to transport him to Kerry, Oregon, where he could receive his pay for such services. The complaint then sets forth as follows:

"That while en route from the milling and logging camp of said Kerry Timber Company to Kerry, Oregon, the plaintiff's said son was accidentally injured by a wheel of one of the trains operated by said Kerry Timber Company running over and crushing his foot and leg.

"That upon sustaining said injury, the plaintiff's said son was taken to the office of the defendants at Neverstill, at which time the defendants herein undertook and agreed to care for him, and from that time until his death he was under the care and control of the defendants herein. That the injury sustained by the plaintiff's said son was not such as would prove fatal had he received ordinary medical care or attention, but on account of the laceration of his foot and leg, arteries and vessels were severed so that the blood flowed freely from said injuries. That the defendants herein carelessly, recklessly and negligently failed to so treat or dress said injuries so as to stop the flow of said blood, although the same could have been stopped by the use of ordinary skill or attention, but, on the contrary, defendants permitted the plaintiff's said son to continue to lose blood from the time they undertook to care for him, to wit, about 1:30 p. m. on said twenty-eighth day of March until his death, and kept the plaintiff's said son in the office of the defendants at said Neverstill until about 2:00 p. m. of said day, giving little or no attention to him during that time, and then placed the plaintiff's said son on a train operated by the said Kerry Timber Company, taking him from said Neverstill to said town of Kerry en route to the hospital of the defendant Lumbermen's Hospital Association at Astoria Oregon, and did nothing during said time to alleviate the shock resulting from said injury. That upon arriving at said station of Kerry, the plaintiff's son

was left in a small waiting-room near the railroad station at said place for approximately one and one-half hours, without the presence or attendance of these defendants or of anyone else, and that during said time the plaintiff's said son continued to grow weaker on account of the loss of blood and lack of attention hereinbefore mentioned, and as a result thereof died in said station about 6:30 P. M. of said day.

"That by the use of ordinary skill or attention the injuries received by plaintiff's said son could have been dressed and treated so as to permit him to fully recover, and that the death of the plaintiff's said son was due to the negligent, careless and reckless conduct of the defendants herein in treating plaintiff's said son in the manner hereinbefore mentioned, and that said careless, reckless and negligent conduct of said defendants was the approximate and sole cause of the death of the plaintiff's said son."

The complaint further avers that defendant B. L. Sears was not equipped, either by training or experience to care for persons injured, which fact was known to the defendant Lumbermen's Hospital Association. The defendants answered separately. Defendant B. L. Sears answered denying most of the allegations of the complaint, a portion of the answer being as follows:

"This defendant answering unto paragraph numbered VIII of said complaint denies the same, and the whole thereof, and each and every allegation therein contained, save and excepting this defendant admits that some time after the said Alexander Emerson had sustained an injury to his person arising from some accident unknown to this defendant occurring to said Alexander Emerson on the train or railroad track of the said Kerry Timber Company, the said Alexander Emerson was brought to the office of this defendant at Neverstill, in Columbia County, Oregon, for medical and surgical aid. That this de-

fendant furnished to and gave the said Alexander Emerson all of the necessary medical and surgical aid and gave ·to him all of the medical, surgical and other aid that was in the power of this defendant to administer and give, but that the said wound received by said Alexander Emerson was a mortal wound, and although this defendant, in the exercise of due care and skill, furnished said Alexander Emerson all necessary medical and surgical aid, the said Alexander Emerson died, for that his wound was mortal.''

The defendant Lumbermen's Hospital Association answered denying all of the allegations showing liability, and alleged that it had a contract for a consideration to be paid exclusively by the Kerry Timber Company whereby the defendant undertook to furnish the Kerry Timber Company surgical treatment and first aid service at and near its place of business at Neverstill, Oregon, and hospital services at Astoria, Oregon, with the necessary medicines and supplies for such of its employees as should become injured or ill while in the actual employ of the Kerry Timber Company; that Alexander Emerson, after he sustained the injury, was taken to the emergency hospital of this defendant at Neverstill; and that Dr. B. L. Sears, as a physician and surgeon, and not as a representative of this defendant, furnished Alexander Emerson all necessary medical and surgical care that could with the exercise of care and skill have been given to him from that time until his death, but that the injury was a mortal wound whereof Alexander Emerson died.

The cause was tried before the court and a jury. At the close of plaintiff's case defendants moved the court for a judgment of nonsuit, which was granted as to both defendants, and judgment entered accordingly.    Plaintiff appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Howard K. Zimmerman* and *Messrs. Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

For respondents there was a brief over the names of *Mr. G. C. Fulton* and *Mr. A. C. Fulton,* with an oral argument by *Mr. G. C. Fulton.*

BEAN, J.—Several errors are assigned by plaintiff upon this appeal. The first for consideration is the disposition of the motion for a nonsuit. It appears from the testimony that Alexander Emerson was injured by the wheel of a logging train running over his leg and practically severing it from his body. The accident occurred about one hundred yards from a house where Mrs. H. E. Miles and her sister resided and about three quarters of a mile from Neverstill, between Sunnyside and Neverstill. Mrs. Miles was a witness for plaintiff and testified as to the circumstances of the accident. Soon after the logging train had passed her house she heard the boy cry, and she and her sister went to his assistance. He was attempting to jump from one railroad tie to another upon one foot with his hands in the air for balance, had proceeded about ten feet and then sat down on a pile of logs. The torn clothing left a trail of blood where he passed over the track. She and her sister attempted to assist him to their house, and had arrived near it, when the so-called railroad jitney or motor-car came, and he was assisted by the men into the car and taken to Neverstill. When the two women got the boy near the house, Mrs. Miles got a quilt for him to lie on, and when the jitney came she let them take the quilt for that purpose.

It appears that the boy was taken to the emergency hospital at Neverstill, and in a short time placed upon

the jitney car and taken to Kerry, where he died about three quarters of an hour after arrival. Dr. Sears looked after him, directed affairs at Neverstill, accompanied him to Kerry, and was with him working over him when he died.

The main allegation in regard to malpractice is that there was a failure to treat or dress the boy's wound so as to stop the flow of blood, although the same could have been done by the use of ordinary skill or attention. We have searched the testimony in vain to find anything as to what treatment was administered to the boy's injured limb, or what the doctor failed or neglected to do. It does not appear from the testimony whether he tried to staunch the flow of blood by binding the limb with a string, rope, wire or a bandage, or what he did. Neither is there any evidence to show what he did not do, or that proper and skillful first aid was not provided for the patient.

There is evidence in the case showing that when the quilt upon which the unfortunate boy was placed was returned to Mrs. Miles it was saturated with blood, and ruined. There was considerable blood upon it where the boy had laid, but there is nothing to indicate but what the blood so flowed from the wound on to the quilt before the doctor had any opportunity to treat the boy. Dr. Sears stated to the coroner that the boy died from nerve shock and from loss of blood. From the description given by Mrs. Miles of how the boy walked or jumped as best he could about one hundred yards, putting one arm on her shoulder and one on her sister's shoulder, it is apparent that the poor boy bled considerably before there was any opportunity for treatment by anyone, and prior to his being taken to the emergency hos-

pital. The women who assisted him were frail, and it took about twenty-five minutes to assist him to make the distance to a place opposite the house. He was afterwards taken on the jitney about three quarters of a mile to the emergency or first aid hospital. T. S. White, the coroner of the county, was a witness for plaintiff and testified that he took charge of the body soon after the boy's death. He was not interrogated in any way in regard to what had been done to treat the limb or stop the flow of blood, and was not asked to describe the condition of the limb at that time, as to bandages or the like. It seems there were several other persons present at Neverstill and Kerry, who saw the boy after the accident; yet no attempt was made to learn from them whether or not aid was rendered the sufferer. Dr. B. L. Sears was called as a witness, and stated that he returned the quilt that he took off from the stretcher upon which the boy was carried, and returned it to Mrs. Miles. The doctor was not asked as to what he did to staunch the flow of blood from the wound, nor anything as to the manner in which he treated the boy, or failed to treat him. The averments of the complaint, as to negligence in the care of the boy, are not supported by the evidence.

' 1. The deposition of Dr. C. E. Cashett, a regularly licensed physician and surgeon, was read to the effect that, in the case of an injury such as a lower limb being run over by a logging car in such a manner as to crush the leg or foot and cause a hemorrhage, the flow of blood should and could be immediately stopped. Dr. Cashett did not see Alexander Emerson after the accident, and was in no way informed as to what treatment, if any, Dr. Sears administered to the patient. For aught that appears in the record

everything suggested by Dr. Cashett was done by Dr. Sears. The complaint does not specify negligence or unskillfulness on the part of either of the defendants in attempting to take young Emerson from Neverstill to the hospital at Astoria for care and treatment. Plaintiff argues that the taking of the boy away from Neverstill on a car shows improper treatment. In the absence of an allegation and proof it cannot be assumed, or held as a matter of law, that it was improper under the circumstances to take the injured young man on a stretcher from a sparsely settled logging community to a hospital.

The first question that naturally suggests itself is: What treatment was furnished the patient after he was placed in the care of Dr. Sears, or did the physician fail to furnish proper treatment? Second, if treatment was accorded, was it proper or otherwise? It cannot be assumed that there was a total failure to render aid and staunch the flow of blood.

2. In a malpractice case the opinion of medical men may be received in evidence as to what would be the proper treatment, but in order for such expert witnesses to have a basis for their testimony they should be informed as to what treatment was given the patient, or what the physician in attendance had failed to do: Rodgers on Expert Testimony (2 ed.), § 64; 22 C. J., p. 663, § 758; *Lehman* v. *Knott,* 100 Or. 59 (196 Pac. 476), opinion rendered March 29, 1921.

3. The death of Alexander Emerson, while under the care of Dr. Sears as a physician and surgeon, or of either of the defendants, is no evidence of want of care, or of unskillfulness or failure to administer proper treatment: *Langford* v. *Jones,* 18 Or. 307 (22 Pac. 1064); *Hills* v. *Shaw,* 69 Or. 460 (137 Pac. 229); *Merriam* v. *Hamilton,* 64 Or. 476 (130 Pac. 406).

Dr. Sears' qualifications as a physician and surgeon, although challenged by the complaint, are not assailed by the testimony. As far as shown he is qualified and skillful. Alexander Emerson was seriously injured, and taken to the emergency hospital at Neverstill. He was attended by Dr. Sears, and as a result of the injury he died. When a physician or surgeon undertakes the treatment of a case he does not guarantee a cure, in the absence of a contract to that effect: 21 R. C. L., p. 391, § 36. The doctrine enunciated by the precedents is, that if a regularly licensed physician with reasonable diligence employs the skill of which he is possessed in treating a surgical case, he is not liable for an error of judgment, and the fact that an unfortunate result follows, is not in any way evidence of neglect: *Hills* v. *Shaw*, 69 Or. 460, 467 (137 Pac. 229), and cases there cited.

4. There being an entire lack of testimony as to whether or not Dr. Sears adopted and applied the proper method of treating Alexander Emerson after he was placed under his care, or to show what he failed to do, the motion for a nonsuit was properly granted.

There is some controversy as to whether or not Dr. Sears was connected with or represented the defendant hospital in so caring for the boy. As we view the case, this and other questions raised become immaterial, and need not be considered.

It follows that the judgment of the Circuit Court must be affirmed. It is so ordered.   AFFIRMED.

BURNETT, C. J., and MCBRIDE and HARRIS, JJ., concur.