Argued November 6; affirmed December 5, 1933

# DARLING *v.* SEMLER

(27 P. (2d) 886)

*S. J. Bischoff,* of Portland (E. L. McDougal and Lawrence Lister, both of Portland, on the brief), for appellants.

*Junius V. Ohmart,* of Portland, for respondent.

CAMPBELL, J.  This is an action for personal injuries alleged to have resulted from the negligence of defendant in treating plaintiff while under his care as a dental patient.

On February 8, 1930, plaintiff regularly engaged the services of defendant, a duly licensed and practicing dentist in the city of Portland, to extract her teeth and prepare her mouth for, and make her an artificial set.  She alleges that defendant, in performing these services, was careless and negligent: (1) in that he failed to make the plates in a reasonable, skillful, competent and good workman-like manner and that the same were crude, misshaped, did not fit, nor did they properly articulate; (2) that he had omitted and failed to administer treatment for an opening from the mouth into the antrum caused by extracting the teeth; (3) that with the knowledge of such opening into the antrum he directed her to wear an artificial plate; (4) that he failed to look for or find said opening into the antrum at the time of extracting her teeth; (5) that he directed her to wear the artificial plate before the opening into the antrum was closed; (6) that he failed to heed her complaints regarding the pain in her mouth and jaw caused by said opening; (7) that he failed to take care or precautions to prevent the inception, aggravation and continual development of the serious condition of plaintiff's mouth, gums and antrum.

The cause was tried to a jury and the usual motions for a nonsuit and directed verdict were season-

ably made by defendant, and overruled. The jury returned a verdict for plaintiff on which judgment was entered and defendant appeals.

1. The appellant did not personally perform all the services rendered plaintiff in his office, but it is admitted that he or his agents or employees performed the services for which plaintiff employed him. We need make no further reference to the agents. On February 8, 1930, he extracted 22 of her teeth, being all she had, and that none of the teeth were infected. Immediately thereafter, he washed out her mouth and continued to treat her from time to time until about September 1, 1930, when he discovered that her antrum was so badly infected that he advised her to go to Dr. Simon, an eye, ear, nose and throat specialist. Dr. Simon performed a surgical operation and in due time succeeded in effecting a cure of plaintiff's antrum. Plaintiff testified that about February 18, 1930, she discovered an opening into her antrum and she called this condition to the attention of appellant; that thereupon one of the nurses in appellant's employ in his office treated the opening with iodine, and a little later again administered the same treatment. She received her first set of plates about June 18 but that they proved unsatisfactory and, thereafter, a new upper plate was made which was also unsatisfactory. About the last of August she received a new set which she was advised to wear but that they hurt her so badly that she could not wear them. She further introduced testimony tending to show that, with the knowledge appellant had of the condition of her mouth, the treatment he administered during the time he had her under his care was not such as accorded with the average standard of the rules and practices of the

dental profession in Portland and similar communities in respect to the things of which she complained as negligence.

Much of the discussion in appellant's brief and supplemental brief is directed to the weight of the evidence. For instance, appellant says:

"There is not a scintilla of evidence that appellant knew or had any reason to believe that there was an infection in the antrum until the end of August."

Plaintiff testified that a few days after her teeth were extracted she discovered the opening into the antrum and called it to the attention of the nurse in appellant's employ in his office and that the nurse treated it with iodine. She testified that thereafter she frequently called appellant's attention to the opening.

■■ The testimony of the expert is to the effect that unless there would be an infection such an opening would quickly heal. A fair inference to be drawn is that there was such an infection and in the exercise of reasonable care and skill defendant would have discovered it. Plaintiff would not likely know whether there was or was not a discharge from such an opening. It was the duty of appellant to discover it if it existed.

■■ We are not concerned with the weight of the evidence. If there is some competent evidence of any of the elements of negligence alleged in the complaint, and some competent testimony that tends to establish that such negligence was the proximate cause of plaintiff's injury, it would be a question of fact for the jury. The learned trial judge properly overruled appellant's motions for a nonsuit and directed verdict.

2. This assignment of error is based on the court permitting an expert witness to answer a certain hypothetical question propounded by counsel for respondent.

Dr. Short was called as a witness for plaintiff and qualified as an expert in dentistry. The hypothetical question asked, like all such questions, is of necessity long and involved and it would serve no useful purpose to quote it in full, because in order to know whether it was correct or not would require a synopsis of practically all the other evidence in the case. It is sufficient to say that there was some evidence tending to prove each element of the hypothesis on which the question was based and the opinion of the expert requested.

Appellant further asserts that the question was objectionable because it was so framed as to draw out the expert's opinion on the ultimate facts that were solely for the jury to pass upon.

After stating the hypothesis, the expert was then asked:

"Q. * * * based upon the aforesaid statement of the facts which is assumed, what was the duty of the dentist according to the average practice of dentists in this community, the City of Portland, and similar communities, with reference to the next step, should an antrum opening be discovered?

"A. Well, under such conditions as this, it is usually the custom, after extraction of teeth, to see the patient once a day or once every couple of days, at least, for quite a spell, to see how they are progressing, but in a reasonable length of time, if there happens to be a socket that is not healing up along with the others, then you begin to suspect that there is something radically wrong and there is only one thing that will prevent the tooth socket from healing up, and

that is infection coming from some place. As long as there is any drainage in a tooth socket it will never heal. Now, under those conditions, if he had taken a little long steel instrument about the size of a straw, he could have inserted it clear up through, almost to the floor of the eye there very easily and after a period of two or three weeks, or a month, if that condition still obtains, then it is evident there is some chronic condition of the antrum and under those conditions it is only a case where an expert rhinologist should deal with.

"Q. Assuming further said facts, in case such opening to the right antrum did not yield to proper treatment by the dentist, is it proper treatment, in your opinion, according to the rules of practice in the dental profession in the city of Portland and similar communities for the dentist to install an upper plate of teeth and order the patient to wear the same regardless of such opening?

"A. Absolutely not.

"Q. Now, Doctor, assuming again said state of facts, what effect, in your opinion, would such negligence in failing to treat the opening into the antrum, covering a period of, say, six months, have on such opening to the antrum?

"A. Well, when an infected antrum, especially a chronic infected antrum is perforated, ninety times out of one hundred if you extract a molar tooth, one of which the root passes up through the floor of the antrum, then that naturally leaves an opening there, and —"

The special objection to this last question is to the use of the words, "such negligence in failing to treat the opening into the antrum". The use of the word "negligence" did not as aptly and concisely express the idea as the word "neglect" would have, yet, it would undoubtedly be understood by the layman as the equivalent of failure or neglect and not as legal *negligence*.

"Words after all are symbols, and the significance of the symbols varies with the knowledge and experience of the mind receiving them." Justice Cardozo in Cooper v. Dasher, 54 S. Ct. 6, 78 L. Ed. —.

The questions and answers were not objectionable. The opinion of the witness should be considered as an aid to the jury in determining scientific and technical facts. The answer was for the consideration of the jury with all the other evidence in the case. *Goldfoot v. Lofgren,* 135 Or. 533 (296 P. 843).

█ It is the duty of a dentist:

"In the treatment of a patient by whom he is employed, it is his undertaking to exercise that degree of care, skill, diligence and knowledge which is ordinarily possessed by the average of the members of his profession in good standing in similar localities: Lehman v. Knott, 100 Or. 59 (196 P. 476); Emerson v. Lumbermen's Hospital Ass'n., 100 Or. 472 (198 P. 231); Patterson v. Howe, 102 Or. 275 (202 P. 225); Hamilton v. Kelsey, 126 Or. 26 (268 P. 750)." Wemett v. Mount, 134 Or. 305 (292 P. 93); Spicer v. Benefit Ass'n., 142 Or. 575 (17 P. (2d) 1107, 21 P. (2d) 187).

3. When Dr. G. H. Hoffman was called as an expert witness on behalf of plaintiff, practically the same hypothetical questions were asked him and the same objections were made.

There were no exceptions taken to any of the instructions given by the court. A careful examination of the whole record leads to the conclusion that the appellant had a full and fair trial before an impartial court and jury.

The judgment of the circuit court will be affirmed. It is so ordered.

BEAN, BAILEY and BELT, JJ., concur.