Argued April 3; affirmed April 24; rehearing denied June 12, 1934

# SCHAMONI *v.* SEMLER

(31 P. (2d) 776)

*S. J. Bischoff* and *Frank S. Senn,* both of Portland, for appellant.

*Thos. H. Tongue, Jr.,* of Hillsboro, for respondent.

CAMPBELL, J.  On March 10, 1932, a complaint was filed in which plaintiff alleged, in substance, that defendant was a duly licensed dentist, practicing his profession in Portland, Oregon; that on November 21, 1930, plaintiff engaged defendant in his professional capacity to extract some of her teeth; that in performing his work of extraction, defendant placed plaintiff in his operating chair and administered a complete anesthetic in the presence of defendant and his office nurse, no one else being present, and while plaintiff was completely unconscious, defendant extracted several of her teeth; that he negligently permitted two broken parts of one of her teeth to pass into the trachea and to be inhaled into, and lodged in, her right lung; that he failed to inform her that the broken parts of the tooth had been absorbed into the trachea; that she suffered severe pain and various pulmonary troubles by reason of said negligence and has required treatment by physicians ever since; that her lungs became infected causing hemorrhages; that on October 27, 1931, during a paroxysm of coughing, she expelled from her right lung two broken pieces of a tooth fol-

lowed by several hemorrhages and discharges of pus; that her health has been permanently impaired.

To this complaint, after certain dilatory motions, defendant, on August 1, 1932, filed an answer admitting that he rendered the professional services alleged, but denied all other allegations of the complaint.

Appellant assigns as error the court's refusal to permit him to file an amended answer setting up the defense of a release executed by respondent for the alleged damages.

It appears that on April 15, 1931, respondent made a claim to defendant for the injuries alleged in her complaint and according to the allegations of the tendered amended answer, she at that time executed a written release in consideration of $105, "releasing defendant, and in full accord and satisfaction of any claim that plaintiff had against defendant". No written motion for permission to file the amended answer was ever filed and it was not tendered into court until the morning of the day of the trial, April 10, 1933.

On March 7, 1933, appellant mailed a copy of his amended answer, together with a request that he enter into a stipulation that it might be filed, to respondent's counsel who refused to enter into such stipulation and on March 21, 1933, so advised appellant's counsel. Counsel for appellant let the matter rest and again on the afternoon of Saturday, April 8, 1933, notified respondent's counsel that he intended to move the court for permission to file his amended answer but had not then and never has filed any written motion to that effect. The cause had been at issue since August 1, 1932. The appellant knew and, according to his tendered answer, had in his possession, the written release referred to, since April 15, 1931, yet he made no tender of that issue to the court until the morning of the trial.

He offers no excuse whatever for the delay, nor was the issue of the release tendered in his original answer nor was the proposed amended answer tendered before the cause was set for trial. When counsel for respondent examined the records of the cause, on Friday before the day of the trial, and found no motion had been filed up to that time, he had a right to assume that appellant had abandoned his intention of moving the court for permission to file the amended answer.

██ The permission to file an amended answer after the time for answering has expired is largely within the discretion of the trial court and the court in exercising that discretion must take into consideration the peculiar facts and circumstances of each particular case and we are of the opinion that, under the facts and circumstances of the instant case, the court did not abuse his discretion: Oregon Code 1930, § 1-906, and see innumerable Oregon cases cited thereunder.

Appellant assigns as error the admission of opinion evidence in answer to hypothetical questions.

Respondent called as witnesses, four practicing dentists of Portland, Oregon, who duly qualified as experts. Each of said experts was asked the following question and permitted to answer it in the negative, over the objection of appellant:

"Q. Doctor, I will ask you in a case where a patient went to a dentist and was placed under a complete anesthetic or gas and one of the front teeth, two of her upper back teeth on the right side of her mouth, two of her lower back teeth on the right side of her mouth, one of her upper back teeth on the left side and one of her lower back teeth on the left side of her mouth (were extracted) and one of these teeth were allowed to pass down the throat of the patient and into her lung and the patient went home and was ill, and the patient was not informed, by the dentist of the

loss of the tooth, I will ask you under those circumstances whether or not you would say that the ordinary care, skill and diligence used by the average, ordinary dentist under like circumstances in the locality had been used?''

In his brief, appellant's counsel argues that permitting the expert to answer was an invasion of the province of the jury. He admits that it is perfectly proper to have experts testify as to the course of treatment that is usually followed in a particular dental operation, that the expert may state what is the usual and proper practice, but claims that the expert must not state that the practice outlined in the hypothetical question was improper.

■ An expert witness may testify whether the treatment and care administered by appellant, as outlined in the hypothetical question, was in conformity with that degree of care, skill, diligence and knowledge which is ordinarily possessed by the average members of his profession in good standing in the same or similar localities: *Darling v. Semler,* 145 Or. 259 (27 P. (2d) 886). That is the standard by which the care, skill and knowledge of the appellant in the instant case should be measured. It was still left to the jury to determine what weight it should give to the testimony of the experts. We can see no difference in asking an expert dentist such a question from asking an attorney what would be a reasonable attorney's fee in any particular case where the question of reasonableness of an attorney's fee was at issue, yet in such a case that is the very question that is asked of the lawyer who is called to testify on the reasonableness of an attorney's fee. No one ever heard of an objection being taken to such a question on the ground that it

was trespassing on the province of the jury: *Lippold v. Kidd,* 126 Or. 160 (269 P. 210, 59 A. L. R. 875).

"It has sometimes been decided, and often assumed to be an inflexible rule of law, that an expert cannot testify to his opinion on the precise fact which is in issue before the jury. * * * But it is evident that this supposed rule, when stated broadly as it often has been stated, involves great confusion of thought and leads to absurd consequences. It is certainly singular that a class of evidence which is admitted when it is only slightly pertinent should be rejected when it is of the highest pertinency. Irrelevancy is made a ground of admission and relevancy of exclusion. Such evidence invades the province of the jury no more than does direct evidence of an eyewitness to a decisive fact. In either case, if the jury are satisfied of the trustworthiness of the evidence it may be conclusive of the issue; but their duty is no more invaded in one case than in the other. Every expert opinion rests on an assumption of facts; if the opinion is given upon a hypothetical question, its weight depends wholly on the jury finding that the assumed facts have been proven; if it is based on the expert's own testimony as to the facts, the truth of this testimony is no less open to their belief or disbelief; and, in addition, the soundness of the opinion itself is to be determined by the jury in consideration of its apparent reasonableness or their confidence in the skill and trustworthiness of the witness, and of any contradiction from other experts." 11 R. C. L. 584.

It seems to us that the reasoning in the foregoing excerpt is unanswerable and the modern trend of the courts is to avoid absurdities.

Appellant relies strongly upon *Patterson v. Howe,* 102 Or. 275 (202 P. 225). In that case a question was asked a physician, who was an eyewitness to an operation of dental surgery by a dentist, whether or not the operation was a skillful dental operation. The witness

was allowed to answer that in his judgment it was unskillful. This court reversed the lower court for permitting the question to be asked and answered. There can be no doubt but that the decision arrived at by this court was correct. The court might well have held that the admission of such testimony was reversible error on the ground that it permitted the witness to fix his own standard. The question asked gave the jury no standard and no facts upon which it could analyze the answer given by the doctor. In the instant case a hypothesis was laid down enabling the jury to weigh and analyze the answers given by the experts. The question in the instant case does not permit the expert to fix his own standard as to what is or is not negligent treatment.

■ This assignment of error is based on the court's refusal to direct a verdict in favor of appellant.

It would serve no useful purpose to make copious extracts from, or even a synopsis of, the evidence. It was admitted that appellant performed the dental operation alleged in the complaint. There is evidence tending to show that immediately thereafter respondent became quite ill, incidental with nausea and violent coughing; that she did cough up from her lung the two parts of the tooth; that the broken parts of the tooth were not insignificant fragments, but the two parts constituted the whole tooth; that appellant admitted, "that is the tooth, I do not know how I lost it"; that respondent suffered much bronchial trouble accompanied by severe pain and much suffering since the tooth coughed up had been imbedded in her lung; that to permit parts of the tooth to enter the trachea and to fail to inform the respondent of such a mishap does not conform to the standard of care and skill of the

average dentist in good standing in similar locations and under similar circumstances.

There was testimony on the part of appellant tending to contradict the foregoing. This left it a question for the jury and not for the court.

■ This assignment is based on the instruction of the court regarding the duty of dentists generally, by adding thereto the duty of a specialist.

Appellant asserts that, because there is no allegation in the complaint that appellant was employed as a specialist by respondent, it was error for the court to instruct regarding the duty, skill and care of a specialist.

The complaint alleges that appellant "was and is a duly licensed dentist and qualified, competent and skillful in the performance of professional dentistry, and particularly in the extraction of teeth". Regardless of the allegations of the complaint, the appellant as a witness in his own behalf, without objection, placed himself in the category of a specialist. He testified that his main work was pulling teeth and that he had pulled many thousands and he classified himself as an extraction specialist. If this was true, then respondent was entitled to appellant's skill as a specialist. However, the instruction of the court did not hold him to that high degree of care and responsibility.

"* * * if it appears from the evidence that, in his treatment and care of the plaintiff, the defendant, Dr. Semler, exercised that degree of care, skill and diligence which would have been ordinarily exercised by the average careful, skillful and diligent member of the profession, engaged in the same line of work in the same vicinity, in the same or like circumstances, then he is not liable in this case, even though you might find that the plaintiff has suffered damage, or even though

you find that the defendant made an error in judgment, if what he did was a mere error in judgment.''

Thus it will be seen that even if we should consider the court's instruction, regarding specialists, as abstract, which under the allegation and the above testimony referred to, it is not, the further instruction just quoted removed any prejudicial error that might have been engendered by an abstract instruction.

■ In this assignment of error it is claimed that the court erred in submitting to the jury issues and charges of negligence alleged in the complaint that were stricken therefrom on motion or were withdrawn by the court at the close of the evidence, because there was no competent testimony to support them.

In his charge to the jury, the court very carefully directed the jury's attention to the allegations of negligence in the complaint that had not been stricken or withdrawn and followed up that statement with:

''There are other allegations of damage with reference to physicians' services and a claim for punitive damages, and some other allegations of negligence which by reason of the law and the state of the evidence, and some previous rulings by the presiding judge, the court is not submitting to you. If you have occasion to refer to the complaint and notice these other matters to which the court does not direct your attention, you will not take them into consideration.''

Again:

''If the plaintiff is to prevail in this case, it must be by reason of some of the acts of negligence alleged in the complaint to which the court has directed your attention and not by reason of some other acts of negligence, if any, which are not specified in the complaint and called to your attention by the court.''

We are unable to see how the court could have made it any clearer to the jury that it was only the particular

acts of negligence to which he had called their attention, they were to consider in arriving at their verdict.

At the close of all the testimony, appellant moved the court to withdraw from the consideration of the jury subdivisions (c) and (g) of paragraph V on the ground that there was no competent evidence to go to the jury on these allegations. The motion was denied and this assignment of error is based thereon.

"(c) That said defendant hurriedly, carelessly, recklessly, negligently and wantonly failed and neglected to use and exercise constant care to see that no tooth or root or broken portion of any tooth or root so extracted by him escape into plaintiff's trachea."

"(g) That said defendant hurriedly, carelessly, recklessly, negligently and wantonly failed and neglected to discover whether any teeth or roots of plaintiff extracted by him, or any fragments thereof, had not been removed from plaintiff's mouth."

During the operation, respondent was unconscious. No one else was present except the dentist and his assistant. Respondent could not testify as to any of the negligent acts alleged and obviously the others would not. Yet the fact remains that the things alleged in these sub-paragraphs did happen and the jury could, under the circumstances and the testimony of the expert witnesses, reasonably infer that they happened because of the negligent acts alleged in the foregoing paragraphs.

This assignment is based on the court permitting Doctor Loomis, an expert witness on behalf of respondent, to testify as to the care, precaution and skill that is taken and used by dentists who do a great deal of extraction work.

This raises practically the same question that was presented in Assignment No. 4 and the same principles apply.

■ Appellant contends that the amount of the verdict is grossly excessive and that it was the result of passion and prejudice created by the misconduct of counsel in the argument to the jury.

Respondent testified that she had always been in excellent health before she had the dental operation alleged in the complaint. From that time she has been ill, has suffered continuously from bronchial trouble and pain in her lungs; that she has been constantly under the care of a physician; that she has lost thirty pounds in weight, suffered from hemorrhages and is threatened with tuberculosis of the lungs; that she cannot sleep at nights; that she has been and still is unable to do any work; that at the time of the operation she was about twenty years of age. Her testimony regarding her physical condition is corroborated by her mother and by the physicians who attended her.

We must assume that appellant intends to convey to this court that the misconduct referred to in this assignment is misconduct on the part of counsel for respondent. The writer, in his experience as a trial judge, has frequently seen the amount of the verdict against a defendant increased by reason of unwarranted argumentative statements made by defendant's own counsel while addressing the jury. The bill of exceptions fails to disclose any objection made to any part of the argument of respondent's counsel. It is very difficult for the trial judge or this court to say just how far counsel may go in presenting the facts to the jury. Juries are not so dumb. They are usually able to separate the wheat from the chaff. Exaggera-

tion in argument usually reacts against the party employing it. In any event generally more harm than good is done by interruption by the court if the counsel keeps within fairly legitimate bounds. We cannot say as a matter of law, in the instant case, that either counsel for respondent or appellant exceeded fair argument on the facts disclosed by the pleadings and the testimony, or that any passion or prejudice was created by the argument, or that the verdict is excessive.

Finding no error, the judgment of the lower court will be affirmed.

RAND, C. J., and BEAN and BAILEY, JJ., concur.