Argued December 16, decided December 30, 1913, rehearing denied March 10, 1914.

# HILLS *v.* SHAW.[*]

(137 Pac. 229.)

**Pleading—Motions—Making More Definite and Certain.**

1. In an action against a surgeon for malpractice, there was no error in refusing to require plaintiff to make more definite and certain a complaint which alleged that defendant's negligence consisted of not bringing and keeping the broken parts of plaintiff's bone into apposition, and while the broken parts overlapped in placing them in a wire splint and afterward in a plaster cast, and permitting them to remain in that condition for 16 weeks.

**Physicians and Surgeons—Actions for Malpractice—Evidence.**

2. In an action for malpractice, an allegation of the complaint that defendant was a practicing physician and surgeon practicing his pro-

[*]As to the degree of care and skill required of physician, generally, see note in 37 L. R. A. 830. And upon the question of the sufficiency as to general allegations of negligence of physician, see note in 59 L. R. A. 267.                                                    REPORTER.

fession in a city in the state, in connection with the laws regulating the practice of medicine and surgery, implies that defendant had, *prima facie*, the requisite skill and ability to practice his profession in the state.

**Physicians and Surgeons—Liability for Malpractice—Care and Skill Required.**

3. If a regularly licensed physician with reasonable diligence employs the skill of which he is possessed in treating a surgical case, he is not liable for an error of judgment, and the mere fact that an untoward result ensues is not evidence of negligence.

**Physicians and Surgeons—Actions for Malpractice—Evidence.**

4. In an action against a surgeon for malpractice, evidence *held* insufficient to sustain a verdict for plaintiff.

[As to action against physician for malpractice as based upon contract or tort, see note in Ann. Cas. 1912D, 866.]

From Josephine: FRANK M. CALKINS, Judge.

This is an action by Thomas Curtis Hills against Dr. H. M. Shaw for malpractice. From a judgment in favor of plaintiff for $6,000, the defendant appeals. Reversed and remanded, with directions to enter a judgment of nonsuit.

REVERSED: REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. H. D. Norton.*

For respondent there was a brief over the names of *Mr. Clarence L. Reames* and *Mr. Robert G. Smith,* with an oral argument by *Mr. Reames.*

Department 1. MR. JUSTICE BURNETT delivered the opinion of the court.

It appears in the record that the plaintiff's leg was broken on June 4, 1910; that the defendant was called to treat the same and undertook to reduce the fracture. It is admitted that at all the times mentioned in the pleadings he was a physician and surgeon practicing his profession in Ashland, Oregon. The complaint specifies the negligence imputed to the defendant in these words: "That the negligence, unskillfulness, and

carelessness of the defendant of which the plaintiff complains herein consisted of the defendant's not bringing and keeping said broken parts of said bone into apposition together; in placing said bone and said leg, while said broken parts were not in apposition together, and while said broken parts of said bone overlapped each other in a wire splint or mesh and afterward in a plaster cast, and in permitting and suffering said leg and said bones to remain in that position and condition for 16 weeks, thus rendering it impossible for said broken bones to either unite, heal, or to grow together.'' The court overruled a motion made by the defendant to require the plaintiff to make the complaint more definite and certain so as to show with greater particularity what act or duty the defendant failed to perform in attempting to bring the parts of the fractured bone into apposition. The answer admitted the breaking of the bone, and that the defendant attended the plaintiff for the purpose of treating him on that account. It alleges that the defendant reduced the fracture by the application of treatment and methods generally used and applied in such cases, and by an approved and recognized system of surgery; that he attended the plaintiff up to July 23, 1910, when the defendant moved to Coos County, Oregon, and thereupon terminated his attendance upon the plaintiff with the latter's consent, and that thereafter he never treated the plaintiff in any manner. It is admitted in the reply that on July 23, 1910, the defendant was about to remove from Ashland to Coos County, and left the plaintiff in care of another physician of Ashland, who continued to treat the plaintiff for about a period of one month afterward; but the reply further alleges that the second physician was acting solely for the defendant. At the close of plaintiff's case the defendant moved for judgment of nonsuit on the ground that

the plaintiff had failed to prove a cause sufficient to be submitted to the jury. This motion was overruled, and at the close of the whole case on the testimony the defendant moved the court to direct a verdict in his favor on the ground that the plaintiff had proved no cause of action against the defendant. The court also refused the motion of the defendant to set aside the verdict against him. The rulings of the court upon these several motions constitute the assignments of error relied upon by the defendant on this appeal.

1. We will consider only the ruling of the court upon the motion to make the complaint more definite and certain, and the decision on the motion for nonsuit. It is safer and better pleading, in cases like the one in hand, for the plaintiff to set out with particularity the acts or omissions counted upon to establish the negligence imputed to the defendant. We are not prepared to say, however, that the court was in error in refusing the motion to make the complaint more definite.

In *Cederson* v. *Navigation Co.,* 38 Or. 343 (62 Pac. 637, 63 Pac. 763), one of the defendant's trains left the rails on which it was running, and killed plaintiff's decedent, who was walking near the track. Negligence was imputed to the defendant in general terms in connection with the death of the decedent. The court declared in that case that ''it cannot be supposed that strangers should be intimately cognizant of the immediate condition of the appliances and the exact manner of the management and operation of a railroad and its engines and cars. These are matters peculiarly within the specific knowledge of the persons or company having the road in charge. * * Under such conditions, it was not error to deny the motion: *Chicago City Ry. Co.* v. *Jennings,* 157 Ill. 274 (41 N. E. 629); *Young* v. *Lynch,* 66 Wis. 514 (29 N. W. 224); *Atchison etc. R. R. Co.* v. *O'Neill,* 49 Kan. 367 (30 Pac.

470) ; *San Antonio, A. & P. Ry. Co.* v. *Adams,* 6 Tex. Civ. App. 102 (24 S. W. 839) ; *Fitts* v. *Waldeck,* 51 Wis. 567 (8 N. W. 363)."

In approving this case, Mr. Justice SLATER, in *Kennedy* v. *Hawkins,* 54 Or. 164, 168 (102 Pac. 733, 734, 25 L. R. A. (N. S.) 606), said:

"It is always necessary in pleading negligence to allege that some act was negligently done, or that something that ought to have been done was omitted, but it is not necessary to set forth the particular facts that show the act or omission to have been negligent. * * This, however, does not relieve the plaintiff from proving a particular act of negligence upon which she bases her right to recover. * * "

The court was not wrong in denying the motion to make the complaint more definite.

The testimony for the plaintiff shows this state of facts: The defendant was called to treat the broken leg on June 4, 1910, assisted by Dr. Brower, who administered the anesthetic. After adjusting the broken parts of the bone, the defendant first applied wire splints, surrounding the thigh, and attached a weight hung over a pulley so as to keep the leg in extension and prevent lapping of the bones, with consequent shortening of the limb. A few days later, when the swelling had subsided somewhat, the dressing was changed, and a plaster cast was put around the limb with the extension weights still applied. The cast was changed from time to time as the swelling decreased further, and on July 23d of that year the defendant notified the plaintiff of his intention to remove to Coos County, Oregon, and left the case in charge of Dr. Brower. To all appearances, so far as the testimony discloses, the leg was treated by the usual methods known and approved by reputable surgeons. About a week after the defendant had gone, Dr. Brower removed the cast, installed another one, and removed

the extension weights. About this time the plaintiff began to sit up in bed, and later got up, moved about the hospital on crutches, and sat up almost daily on the porch. Some time during the month of August, Dr. Brower took the plaintiff in his automobile into the town of Ashland, assisted him out upon the street, and left him to himself for possibly an hour. The plaintiff testifies that during the time he was moving about the town he began to suffer excruciating pain in his leg, and was compelled to go into a store and sit down with the leg propped up. Dr. Brower took him back to the hospital, and, as he testifies, began to suspect soon afterward that a union of the bone had not been achieved. He then called other surgeons, who confirmed his suspicion that the bone had not united, and on September 19th they operated upon the leg by cutting into it at the point of fracture. It was then discovered for certain that the bone had not united, that the ends had slipped past each other about two inches, and that in so doing the lower fragment had turned halfway round upon its axis, so that the two ends of the oblique fracture were, as one witness puts it, "back to back." In the operation which ensued it became necessary to remove part of the bone, so that when the fracture finally healed the plaintiff's right leg was about three inches shorter than the other. The question to be determined is whether there is proof of negligence on the part of the defendant sufficient to be submitted to the jury.

2–4. It is not urged that the defendant was not possessed of the requisite skill and ability to practice his profession in this state. On the contrary, it is alleged and admitted that "the defendant has been and now is a practicing physician and surgeon practicing said profession in Ashland, Jackson County, Oregon." In connection with the laws regulating the practice of

medicine and surgery, this necessarily implies that *prima facie,* at least, he had the requisite skill and ability. The essence of the charge is that he did not exercise the skill of which he was possessed.

In the well-considered case of *McGraw* v. *Kerr,* 23 Colo. App. 163 (128 Pac. 870), in speaking of a surgeon, among others, certain rules are thus laid down:

"He does not undertake to warrant a cure, and is not responsible for want of success, unless that want results from failure to exercise ordinary care, or from his want of ordinary skill. * * If he possesses ordinary skill, and exercises ordinary care in applying it, he is not responsible for mistake of judgment. * * The fact that an injured limb is defective after treatment is not evidence of negligence on the part of the physician treating it."

That was a case where negligence was imputed to the defendant, a surgeon, in the treatment of a fractured arm. The court further said:

"Defendant requested an instruction to the effect that the fact that perfect or even good results were not obtained is not of itself any evidence that the physician was negligent, and that, in determining the question of whether the defendant, upon the facts in evidence, was negligent or not negligent, the condition of plaintiff's arm at the time of trial, or when defendant's treatment ceased, was not to be considered as evidence bearing upon that question. The instruction was refused, and its equivalent or substance was not given. Both from reason and authority it is clear that the result obtained from an operation, or treatment, in a case of medicine or surgery, is ordinarily neither *prima facie,* nor any evidence of negligence. * * A surgeon may be assiduous, painstaking and careful to the last degree, using all the recognized means at his command, both ordinary and extraordinary, and still fail. In such case it is manifest that failure is neither the result nor evidence of neglect. Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do

something which he should have done. By allowing
the jury to consider any imperfect position of the frag-
ments of the bone which had been broken, as evidence
of negligence, appellant was not tried for what he did
or omitted to do, but by the criterion of results. If
the jury could regard an imperfect position of the bone
as evidence on the question of appellant's exercise of
care, then the doctrine of *res ipsa loquitur* applies.
* * The maxim *res ipsa loquitur* has no place nor ap-
plication in a case like this, and the jury should have
been so advised."

In *Ewing* v. *Goode* (C. C.), 78 Fed. 442, the court
said:

"A physician is not a warranter of cures. If the
maxim, *res ipsa loquitur,* were applicable to a case like
this, and a failure to cure were held to be evidence,
however slight, of negligence on the part of the physi-
cian or surgeon causing the bad result, few would be
courageous enough to practice the healing art, for
they would have to assume financial liability for nearly
all the 'ills that flesh is heir to.' "

The following precedents are instructive: *Langford*
v. *Jones,* 18 Or. 307 (22 Pac. 1064); *Williams* v. *Pop-
pleton,* 3 Or. 139; *Jackson* v. *Burnham,* 20 Colo. 532
(39 Pac. 577); *Wells* v. *Ferry-Baker Lbr. Co.,* 57
Wash. 658 (107 Pac. 869, 29 L. R. A. (N. S.) 426);
*Staloch* v. *Holm,* 100 Minn. 276 (111 N. W. 264, 9
L. R. A. (N. S.) 712); *Haire* v. *Reese,* 7 Phila. (Pa.)
138; *Wood* v. *Barker,* 49 Mich. 295 (13 N. W. 597);
*Wurdemann* v. *Barnes,* 92 Wis. 206 (66 N. W. 111);
*Dye* v. *Corbin,* 59 W. Va. 266 (53 S. E. 147); *Sweeney*
v. *Erving,* 35 App. D. C. 57. The substance of the doc-
trine taught by these cases is that if a regularly
licensed physician with reasonable diligence employs
the skill of which he is possessed in treating a surgical
case, he is not liable for an error of judgment, and
that the mere fact that an untoward result ensues is
not in any sense evidence of negligence. There are so

many elements combating the surgeon in his efforts to restore a patient to bodily soundness that he can do no more than exercise his best skill and judgment to accomplish the desired result. It has been said:

"The distinction between an error of judgment and negligence is not easily determined. It would seem, however, that if one, assuming a responsibility as an expert, possesses a knowledge of the facts and circumstances connected with the duty he is about to perform, and, bringing to bear all his professed experience and skill, weighs those facts and circumstances, and decides upon a course of action which he faithfully attempts to carry out, then want of success, if due to such course of action, would be due to error of judgment, and not to negligence. But if he omits to inform himself as to the facts and circumstances, or does not possess the knowledge, experience, or skill which he professes, then a failure, if caused thereby, would be negligence. 'No one can be charged with carelessness, when he does that which his judgment approves, or where he omits to do that of which he has no time to judge. Such act or omission, if faulty, may be called a mistake, but not carelessness' ": *The Tom Lysle* (D. C.), 48 Fed. 690, 693.

The ideal to achieve which the surgeon strives in cases of this kind is to establish coaptation of the broken parts of a bone with the surfaces of the fresh fracture touching each other so that the bone is restored to its original situation, and then by bandages or other appliances to keep it in position until healing ensues. This is the utmost that the highest degree of surgical skill can accomplish. Nature must do the rest. What, then, is proven here showing that the defendant was remiss in his duty? It is admitted that he properly diagnosed the case as a fracture of the right femur. Did he endeavor to ascertain by palpation whether the parts of the bone were in apposition? The testimony shows that he did make such an effort.

Did he apply proper dressings to maintain that situation? The record of the trial affirms this. Did he install extension weights to overcome the natural muscular contraction tending to displace the bone? It is admitted by the testimony of the plaintiff himself. The treatment was not done in a corner. It was performed in a public hospital, in the presence of another physician and the attendant nurses. The testimony gives no history of any shortening of the leg or sidewise displacement of the foot during the defendant's connection with the case, both of which would have been apparent to any layman if during that time the broken bone had got into the unnatural position discovered at the final operation performed by the other surgeons. It was not until after the plaintiff had begun to sit up and move around on crutches and had gone into town in the automobile that a misplacement or nonunion was suspected. Dr. Brower, testifying as plaintiff's witness, states that it was not until after the automobile excursion that he even feared that anything was wrong about the broken bone. No lack of application of the ordinary remedies is shown. Reduced to its lowest terms, the case is one where the surgeon has treated a case in which the result was a failure. There is nothing to show that he did not do his best with what skill he possessed. The error of plaintiff's contention consists in relying upon the abortive result of the treatment as an evidence of negligence on the part of the defendant, without showing further that some careless act or omission of his produced that undesirable consequence. To hold the defendant liable under such circumstances would be to make him an absolute insurer of success in every operation which he undertook. Such a rule would be too drastic to be applied to the medical and surgical profession, and is not borne out by the authorities. How-

ever deplorable the condition of the plaintiff, there is a *hiatus* in the testimony on his behalf between the time the defendant ceased to treat him and the subsequent discovery of the nonunion of the bone which breaks the connection of the defendant with the untoward result so far as negligence is concerned.

The cause is remanded, with directions to enter a judgment of nonsuit.

REVERSED: REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.