Argued April 11, affirmed June 26, 1928.

# OLGA HAMILTON *v.* R. C. KELSEY.

(268 Pac. 750.)

For appellant there was a brief over the name of *Messrs. Senn & Recken,* with an oral argument by *Mr. F. S. Senn.*

For respondent there was a brief over the name of *Messrs. Davis & Harris,* with an oral argument by *Mr. Paul R. Harris.*

ROSSMAN, J.—■ ■ First, we shall determine whether the court erred when it denied the motions for a nonsuit and a directed verdict; these two assignments of error we shall consider together. Before the plaintiff could recover, it was necessary that a preponderance of the evidence should establish that the defendant was negligent in one or more of the particulars set forth in the complaint, and that such negligence was the proximate cause of the injury to her physical condition of which she made complaint. Let us now ascertain whether the evidence supplied these two necessary elements. When the defendant entered upon his employment there arose out of his undertaking a duty to use due care. Since the parties did not fix by contract the degree of care, the law implied that the defendant should employ ordinary care. The term "ordinary care" is quite complete in itself. But if we may be permitted to elaborate, we shall state the physician's duty and undertaking in this language; his undertaking is not an absolute one to cure, not to restore a condition of good health; nor is he an insurer of the efficacy of his services. His undertaking is to exercise that degree of care, skill, diligence and knowledge which is ordinarily possessed by the average of the members of his profession in good standing in similar localities. This is the generally accepted rule: *Emerson* v. *Lumbermen's Hospital Assn.,* 100 Or. 472 (198 Pac. 231); *Lehman* v. *Knott,* 100 Or. 59 (196 Pac. 476); *Hills* v. *Shaw,* 69 Or. 460 (137 Pac. 229); *Langford* v. *Jones,* 18 Or. 307 (22 Pac. 1064); *Williams* v. *Poppleton,*

3 Or. 139. In the following cases and their annotations in the selected cases reported, the foregoing rule is applied to a variety of situations; *Dorris* v. *Wargord,* 124 Ky. 768 (100 S. W. 312, 14 Ann. Cas. 605, 9 L. R. A. (N. S.) 1090) ; *Friend* v. *Kramer,* 236 Pa. 618 (85 Atl. 12, Ann. Cas. 1914A, 272) ; *Whitesell* v. *Hill,* 101 Iowa, 629 (70 N. W. 750, 37 L. R. A. 830) ; *Burk* v. *Foster,* 114 Ky. 20 (69 S. W. 1096; 1 Ann. Cas. 304, 59 L. R. A. 277).

■ ■ The lack of a successful result is not to be considered as evidence that the physician failed to exercise the requisite degree of care : *Emerson* v. *Lumbermen's Hosiptal Assn., supra; Hills* v. *Shaw, supra.* In determining whether the physician's treatment met the standard exacted by law it is generally necessary to know what medical men ordinarily do under like circumstances. To secure this information, the opinion of medical men may be received : *Emerson* v. *Lumbermen's Hospital Assn., supra; Lehman* v. *Mott, supra.* Having ascertained the degree of care exacted by law of the physician and the general rules which would guide us in our inquiry, let us now ascertain whether there was any evidence to the effect that the professional services of this defendant failed to meet the law's requirements. In proceeding with our investigation we must bear in mind that we are not authorized to weigh and appraise the value of the evidence. The Constitution of this state has limited our powers to that of detecting its presence. Substantial evidence upon any subject necessitates that the party favored by it was entitled to have the issue in support of which it was presented submitted to the jury.

■ The record contains evidence substantiating the following : That the plaintiff, a woman thirty years

of age, who had always been in good health, experienced suddenly some severe pains in the right side of her abdominal section. After these pains had continued for two or three days, the services of the defendant were obtained. He advised the plaintiff that the cause of her pains was gall-stones, and requested her to visit him at his office as soon as she was able to do so. Two or three days later when she called he took her to the office of the X-ray practitioner and some plates were made. Upon the occasion of this visit the defendant gave her some medicine, saying that its use might dissolve the stones. The hoped for effect was not produced, however, and when the plaintiff came to the defendant's office a day later the surgical operation was performed which resulted in this action. Preceding the operation, the defendant had stated to the plaintiff and her husband that a surgical operation to remove gall-stones was not serious, and that it could be readily performed in his office under the influence of a local anesthetic. Plaintiff's husband testified that the defendant brought forth a medical book and employed some of its recitals to corroborate the foregoing statement. Eight A. M. of June 3d, the defendant proceeded with the operation. The plaintiff testified that she would have been willing to have gone to a hospital, but was persuaded by the defendant that this was unnecessary. The latter testified that he had never performed an operation in any of the public hospitals of Portland. His office consisted of a suite of four or five rooms. In one of these was a surgeon's chair which could be placed in a reclining position, for use as an operating table; over it hung an adjustable light. Before making the incision the defendant administered to the plaintiff a local anesthetic. After the incision had

been opened the plaintiff twice heard the defendant say to a nurse, who was assisting him, that there was "nothing in there." Shortly thereafter the plaintiff gave sufficient evidence of feeling pain that the defendant determined that he would administer a general anesthetic. Ether was thereupon administered to the plaintiff and she was unable to observe what occurred thereafter until consciousness was restored to her. In the meantime the defendant sent to a store for an additional quantity of ether. Upon its receipt it was taken into the operating room. At about 5 or 6 o'clock P. M. the plaintiff was removed to her home in an ambulance. Prior to the operation the defendant informed the plaintiff that the operation would cause "a very small incision only about an inch long," but when she returned home the cut was about six inches in length and about four inches deep. Two days later, after she had digested a small quantity of food, the fecal matter was ejected through this incision and as it oozed forth it pushed out of place the gauze drain. This unexpected development alarmed the family and the defendant was sent for. He had made no intimations to the plaintiff or her family that such an occurrence was to be expected. Upon his arrival the defendant said that at some time the plaintiff had probably swallowed something sharp and that this object had caused a rent in the colon. The defendant cleansed the incision, prescribed a course of treatment and left. The plaintiff's condition did not improve; the fecal matter continued to come forth from the open incision and a few days later the plaintiff procured the services of another physician, Dr. L. O. Roberts. June 14th the plaintiff was taken to a hospital, where a course of treatment was adopted in the hopes that nature would repair

the rent in the colon. When this desired result did not occur, another operation was resorted to August 6th by Dr. T. W. Kirby, with the assistance of Dr. Roberts. Dr. Kirby testified that in the course of the operation he found the transverse colon adhering to the wound and an opening in the colon an inch and a half to two inches in extent attached to the body wall of the incision. These physicians closed the rent with some stitches, the incision healed, and thereafter the plaintiff recoverd her health. In order to understand our purpose in setting forth a brief digest of the balance of the testimony it is necessary to refer to the defendant's explanation of the rent in the colon. He testified that he did not operate upon the plaintiff for gall-stones, but to lance an abscess; that lancing an abscess is a simple matter which would not require him to pierce the abdominal wall. He added, however, that the abscess had its origin in the colon and was working itself through to the outer surface of the abdomen, and that when he opened the abscess fecal matter came forth.

Reverting now to the other testimony, Dr. Kirby testified that the incision which he found in the abdomen extended entirely through to the colon; that its depth was approximately four inches. He testified that he saw no indication whatever that there had been an abscess in the vicinity of the incision; that an abscess on the colon is always accompanied with a fever; the plaintiff testified that she had experienced no fever before the defendant operated. The defendant testified to no indications of fever and did not deny that fevers accompany such abscesses. Dr. Kirby testified that he never observed or knew of an abscess forming on the transverse colon and attaching itself to the abdomen wall and then breaking

through the latter into the muscles and the outer surface as claimed by the defendant. He testified that in his opinion the rent "could not be due to any other cause than the fact that there was a stitch put through the colon and it was drawn up to the incision and in a day or two days that stitch sloughed out and the fecal matter poured out following the stitch." The defendant's office faced upon a court in a downtown office building; the room in which the operation was performed had two windows. Dr. Kirby testified that to perform an operation of this kind in an office "is more difficult and you are more apt to blunder in an office than you are in a reputable hospital where you have every facility to do the right thing." The same witness testified that the defendant did not give the plaintiff the proper treatment and that his treatment was not in accord with the rules and practice of the medical profession generally prevailing in the City of Portland and communities similar to it. Dr. Andrew C. Smith, in response to a hypothetical question, testified that the tear in the colon was caused during the course of the operation either by the knife or by a needle; likewise that to perform an operation of this kind in an office was not in conformity with the rules and practice followed in the City of Portland and similar communities, and that an endeavor to do so in such an office as the defendant possessed would be very likely to produce an unfavorable result. He added that such an operation cannot be as well performed in an office as in a hospital, and that when such operations are skilfully performed they do not result in tears of the colon.

The foregoing evidence we believe has a tendency to establish that the defendant undertook to perform an operation to remove gall-stones; he denied this

and testified that he lanced an abscess. If the latter was his errand, he did not disclose his purpose to his patient or her family before proceeding, although he had made an examination and supplied himself with X-ray plates. A physician is not generally at liberty to attend to any organ or member of the body that he may feel requires adjustment. There are some limitations upon his authority. An attorney who was consulted in regard to the collection of a note would not feel himself invested with authority to procure a divorce for his client. These limitations upon the scope of the surgeon's authority were recognized by this court in *Hively* v. *Higgs*, 120 Or. 588 (253 Pac. 363), and the matter is discussed in 21 R. C. L., Physicians and Surgeons, § 37. The plaintiff testified that the defendant never discussed with her a possible abscess as the source of her illness, yet the defendant contends that the head of the abscess was evident upon the plaintiff's abdomen. He admits that in the beginning he had suggested that she might have been suffering from gall-stones. It is remarkable that when he had satisfied his mind that gall-stones was not the cause of her ailment, but had led her to believe that such was his opinion, that he did not acquaint her with his new theory in regard to the abscess, especially since he contends that evidence of the latter was present upon her abdomen and visible. We therefore feel that we owe a duty to the plaintiff to assume that the defendant undertook to perform an operation to remove gall-stones. Addressing ourselves to the inquiry whether the record contains evidence of negligence, we have the following: two reliable physicians, whose integrity, experience and high professional standing were not attacked, testified that to use an office of the kind

possessed by the defendant for gall-stone operations was to fail to meet the standard of professional service generally rendered in the City of Portland and similar communities. Testimony by these same physicians and also by one who testified in behalf of the defendant establishes that such an operation is a major one. Physicians testified that to use an office for such a purpose is likely to produce the unfavorable result which followed the defendant's services. The late lamented Mr. Chief Justice BURNETT recorded in our Reports the desirability of employing the facilities of hospitals for performing surgical operations when he wrote in *Hills* v. *Shaw, supra:* "The treatment was not done in a corner, it was performed in a public hospital in the presence of another physician and the attendant nurses." We have the opposite presented to us by the evidence in this case.

But the problem still remains, Was this alleged negligent act the proximate cause of the rent in the colon? Defendant relies upon the rule that if it appears at the conclusion of the evidence that there were two or more possible causes of the injury for one or more of which the defendant was responsible, but for the rest of which the defendant was not responsible, the evidence must show affirmatively that the injury was wholly or partially the result of that cause or causes for which the defendant was responsible; otherwise the plaintiff cannot recover: *Merriam* v. *Hamilton,* 64 Or. 476 (130 Pac. 406); *Engstrom* v. *Wise Dental Co.,* 97 Or. 634 (193 Pac. 187). In our case the defendant testified that the cause of the opening in the colon was the abscess; we have already seen the plaintiff's evidence tended to show that the opening was a tear or rent caused by a stitch which

the defendant sent through it. But the plaintiff's evidence went beyond this and had a strong tendency to discredit the defendant's explanation. For instance, Dr. Kirby testified that there were no indications of an abscess; that he had never seen an abscess of the kind described by the defendant, and that an abscess of the colon is accompanied by a fever. The defendant's testimony was that he did not cut through the abdominal wall. Dr. Kirby's testimony was that the defendant went through the abdominal wall and to a depth of four inches. This situation does not disclose two possible causes of an injury both existing, but it presents us with two sets of witnesses, each seeking to establish a cause in conflict with the other. Both were not true; one or the other was false. Hence, the case does not present a set of facts calling for the application of the rule which we have just reiterated, but presents a pure question of fact for the determination of the jury. No error was committed when the court denied the motions for a nonsuit and a directed verdict.

So far we have been proceeding as though there were no questions of evidence before us. However, to much of the medical testimony objections were interposed during the course of the trial; we shall now dispose of the assignments of error which are predicated upon these objections. We deemed it best to postpone our disposition of these assignments of error to this place in our decision because the admissibility of this evidence can be better determined now that we have set forth the story of the case.

■ In the reception of the evidence the defendant's principal objections were offered when the hypothetical question was propounded to Drs. Kirby and Smith. This question covers two and one-half pages

of the abstract of record. Further questions supported in part by the hypothetical question cover additional space. Hence, we shall not undertake to quote these hypothetical questions in this decision. The main question delineated plaintiff's symptoms of illness, the engagement of defendant in his professional capacity, his diagnosis of the case and his operation upon the plaintiff in his office. It described the windows, electric light and other appurtenances of his office, also the incision and the tear in the colon. We are satisfied that all parts of the question closely followed the evidence with the possible exception of the following:

" * * an incision was made in the patient's abdomen under a local anaesthetic, and after an examination of the gall-bladder the physician ascertained and determined that there were no gall-stones present; the physician then decided that it would be necessary to make an exploratory operation, for which operation it was necessary to administer ether to the patient; the supply of ether on hand was not of a sufficient quantity so that the patient could be kept under the effect thereof during said operation, and in order to continue the same it was necessary to send one of the assistants from the office to a store to procure additional ether, the patient was placed under the effects thereof, and said operation was continued."

The objection of counsel for the defendant was likewise of considerable length. Eliminating its nonessentials it consisted of the following:

"I would object to that, your Honor; not a proper foundation laid; the elements are not properly stated, and it is not within the issues of the complaint. * * The question is: Did he, when he performed this operation on the third day of June in this office cut that transverse colon? That is the only question in this case, the only element that they have charged us

with. They say that the defendant,—they specify the negligence,—they say that defendant failed to exercise reasonable and ordinary care and skill in performance of said operation, in that he caused a puncture or rent as aforesaid in plaintiff's transverse colon, which would not have been caused if the defendant had exercised reasonable skill and diligence. Now, did he cause that rent when he performed that operation? * * *"

Later the objection was amplified by adding to it the contention that there was no allegation in the complaint that a stitch had entered the colon, and still later the additional contention was advanced "this question of proper or improper treatment is not within the issues.* * *" Still later counsel for the defendant made the observation that he did not remember any testimony in the case that the defendant was compelled to send for more ether. The hypothetical question first inquired of the witness when in his opinion the rent took place. This question being answered, the narration of facts in the question was used as the background for an inquiry whether the treatment described in the hypothetical question conformed with the practice generally observed in the City of Portland and similar communities. When this question had been answered, the witness was asked what consequences, if any, followed the performance of such an operation in the office of the defendant.

We believe that the information sought by the hypothetical question was manifestly within the issues. It is evident that the plaintiff was endeavoring to show that the defendant departed from the ordinary practice in such cases. It was the plaintiff's contention that the operation performed by the defendant was a major one, and that the standards of

practice generally adopted in Portland recognized that the facilities of a hospital were requisite to the success of the undertaking, and further that to perform this operation in an ordinary office, with its limited facilities, was such a marked departure from the well-established practice that it constituted negligence. See *Jackson* v. *Burnham,* 20 Colo. 532 (39 Pac. 577); 30 Cyc. 1576. For a collection of cases, see footnote in 37 L. R. A. 836. We believe that the inquiries were permissible for the above purpose. In all of his objections to the introduction of the medical testimony under these hypothetical questions the defendant argued that the complaint charged the defendant with puncturing the colon and that defendant's denial of the charge constituted the sole issue. In other words, the defendant contended that there was no evidence that his services inflicted the injury concerning which the plaintiff made complaint. Thus he expressed himself at one time: ''Now did he cause that rent when he performed that operation? Did he cut the colon? Now that is the only question in this case.'' However, in his brief, the defendant argues that the hypothetical question was not preceded with evidence that the defendant examined the gall-bladder and found no stones in it; that there was no evidence of an exploratory operation, and that there was no evidence of a delay while more ether was sent for. The objection offered to the Circuit Court did not indicate any deficiency in the evidence in the above particulars.

■ The objection performs a useful purpose in the presentation of the evidence. When a party objects, he invokes the court to exclude material which he believes is improper; without an objection the court would be entitled to assume that the opponent did

not desire to have the testimony excluded. But to merely object generally is not sufficient; the inadmissibility of the proposed proof may be apparent without more than counsel's protest, but many times the infirmity of the offered evidence or its infraction of some rule of evidence is not patent. It is under these circumstances that the objection should be as specific as the situation demands. In Wigmore on Evidence (2 ed.), Section 18, the purpose of the objection is thus stated: "The function of the objection is first to signify that there is an issue of law, and secondly to give notice of the terms of the issue. An objection serves for the rules of Evidence, the same purpose as a demurrer for the rules of substantive law." In *Wallace* v. *American Toll Bridge Co.*, decided by this court February 14, 1928 (Or.), 264 Pac. 351, we pointed out the desirability and necessity for specific objections as distinguished from those of a nebulous type whose precise form, substance and purpose is not revealed until the case has reached this court. To the same effect see *State* v. *Merlo*, 92 Or. 678 (173 Pac. 317, 182 Pac. 153), and for an application of these principles to a hypothetical question, see *Hildebrand* v. *United Artisans,* 50 Or. 159 (51 Pac. 542). A situation quite similar to that before us was recently before the Idaho court in *Hayhurst* v. *Boyd Hospital,* 43 Idaho, 661 (254 Pac. 528), in which the court disposed of the matter in this manner:

"It is also urged that the court erred in overruling defendant's objections to hypothetical questions, upon the ground that they did not fairly reflect the facts in evidence. Counsel's objections were not sufficient to raise the question, since they did not point out wherein the facts assumed did not properly reflect the facts proven, or incorporated facts not proven.

*Pennington* v. *Kansas City R. Co.*, 201 Mo. App. 483 (213 S. W. 137); *Knutson* v. *Moe Bros.*, 72 Wash. 290 (130 Pac. 347); *Quaker Oats Co.* v. *Grice* (C. C. A.), 195 Fed. 441. 'There should be no masked batteries in the trial of a lawsuit. All matters should be uncovered in a manner that the court, counsel, and jury may see and understand all questions presented for determination. No court can intelligently rule upon a question without it understands the question.' *Kinlen* v. *Metropolitan Street Railway*, 216 Mo. 145, 173 (115 S. W. 523, 533).''

■ The stock objection, "not a proper foundation laid," is too general in most instances to indicate to adversary and court the particular that is missing. We are of the opinion, therefore, that the objection "not a proper foundation laid" was not sufficiently specific to raise the alleged defects pressed upon our attention. But apart from this we have carefully examined the evidence and compared it with the facts narrated in the hypothetical questions; we believe there was enough evidence to lay a foundation for the hypothetical question. The objection having been general, we believe that the court did not err when it overruled under the foregoing circumstances.

The other objections to evidence are not argued in the brief, but have received our careful attention. We believe that they are without merit.

It follows from the foregoing that the judgment of the Circuit Court must be affirmed.     AFFIRMED.

RAND, C. J., concurs in result.

COSHOW and MCBRIDE, JJ., concur.