Argued October 22, 1930; affirmed March 17, 1931

# GOLDFOOT *v.* LOFGREN

(296 P. 843)

*John S. Coke*, of Portland (Griffith, Peck & Coke, of Portland, on the brief) for appellant.

*E. M. Morton* and *Robert L. Jewell*, both of Portland (Morton & Littlefield of Portland on the brief), for respondent.

ROSSMAN, J. The first assignment of error contends that the circuit court erred when it overruled defendant's objection to a hypothetical question submitted to two medical experts called by the plaintiff. The question purported to outline the history of the infection that developed in the plaintiff's lungs as it had previously been narrated by the plaintiff and her witnesses. This question is too long for quotation; but a sufficient understanding of its nature can be gained from the following synopsis of its more important recitals: It requested the witness to assume that the operation was performed while the plaintiff was under the influence of general anaesthetic; that while her tonsils were being removed she was lying upon her back upon an operating table so tilted that her head was lower than the rest of her body and her face was turned to one side so as to permit the blood to flow out

of her mouth; no more bleeding than the normal amount occurred; the surgeon used sponges to stanch the flow of blood, and to prevent it from entering her throat; no vomiting or coughing occurred during the course of the operation; when the plaintiff was removed to a bed in one of the other rooms of the hospital her throat was dry of blood; the physician placed her upon her side upon the bed with head in a lowered position, a pillow to her back; the nurse did not remain in the room with the plaintiff; a few moments later the plaintiff, while still under the influence of the anaesthetic, and while still unattended by a nurse, but while sitting up in the bed, had a vomiting spell during which she expelled a clot of blood, and that she "threshed about at times and at other times lay upon her back while the incisions were still bleeding." The objection to this question was thus expressed:

"The witness is not competent to testify upon that question. The question does not contain a correct basis, as a hypothetical question, and does not correctly state the facts proven, and that the question is incompetent, irrelevant and immaterial; and furthermore, that the question calls for an answer from this witness which involves the very thing the jury is called upon to determine; it calls for the opinion of the witness as to what was the cause of the alleged damage. Now, that is a question for the jury, and not for the witness, and we think it is improper on that ground."

The question concluded with the inquiry: "State whether in your opinion the abscesses would be likely to have been caused by the infected blood drawn into the lungs." The first witness replied: "I would say yes, due to the fact that  *  *  *." Dr. Bueermann replied: "Certainly one is led to the conclusion,—cause and effect,—that the abscesses in this particular hypothetical question that you mention must be due to the

factors preceding the abscesses, in this particular instance, the aspiration of blood or mucus." Each witness, after he had replied to the aforementioned question, was asked: "Having in mind the same facts which you have been asked to assume about this patient state when, in your opinion, the aspiration of blood into the patient's lungs would be most likely to have occurred." Substantially the same objection was made to this question as to the preceding one. The first witness replied that it was "most likely" to have occurred in the post-operative period while "the patient is coming out from under the anaesthetic" and is "struggling around and when the vomiting, due to the anaesthetic occurs." The second witness, after explaining that the bronchial tubes, being very sensitive to any extraneous foreign material, cause paroxysms of coughing to occur the moment any such substance is inhaled into them, expressed the belief that the absence of coughing during the operation, but its presence when the patient was struggling about on the bed, was a strongly persuasive circumstance indicating that at that time the infected blood entered the lungs. He concluded his reply as follows: "I would say that it most likely occurred during the time that this coughing spell was on, when the presence of blood and mucus was in the posterior pharynx, the back of the throat, and where the constant choking and straining in an attempt to get air there, and expel again that which had been taken in along with air occurred, and that, in my opinion, would be the period in this particular hypothetical case, when this occurred, and I believe it occurred during the post-operative period." Following the above reply Dr. Bueermann was asked whether the attention of a competent nurse, while the patient was recovering consciousness, would have prevented the entry of the in-

fected blood into the lungs. The defendant objected that the question was incompetent, irrelevant and immaterial. The witness replied: "I believe the probabilities of any aspiration occurring would certainly be reduced to a minimum."

■ We do not believe that the defendant's objections pointed out to the circuit court any reason for holding the questions improper. The general objection "incompetent, irrelevant and immaterial" is not a favorite of the law and is sustained only when the question is obviously improper: *Hamilton v. Kelsey*, 126 Or. 26 (268 P. 750); *Wallace v. Am. Toll Bridge Co.*, 124 Or. 179 (264 P. 351), and *State v. Wye*, 123 Or. 595 (263 P. 60). Certainly the information sought by the aforementioned questions was not immaterial, and hence the questions were not subject to this objection. We come now to the portion of the objection which contended "the witness is not competent to testify." Each witness in support of his competency testified to his familiarity with tonsillotomies, which we understand is the medical title applied to this type of operation. Dr. Phillips, one of the two who was apparently a very young man, testified that he had performed "about 150 tonsillotomies;" the competency of Dr. Bueermann was not disputed. Whether an alleged expert possesses sufficient experience to render his opinions valuable and, therefore, admissible, is generally intrusted to the discretion of the trial court; its rulings will not be disturbed on appeal unless it appears that the discretion has been abused: Wigmore on Evidence (2d Ed.), § 561 (citing Oregon decisions).

■■ We come now to the next subdivision of the objection which argues that the hypothetical question "does not contain a correct basis * * * and does not correctly state the facts proven." The hypothetical

question was predicated upon extensive preceding testimony which described the plaintiff's condition both before and after the tonsil operation, and it apparently endeavored to faithfully state the essence of this evidence as the hypothesis for the answer. Neither appellant's objection nor her brief points out any fact omitted by the question, but we find that although the plaintiff and the physician, who removed her tonsils, described her condition prior to the operation, briefly, the question made no mention of this fact. The plaintiff testified that before the tonsil operation she had been in good health but "felt as though I had a cold," and her physician testified that his examination of her disclosed "she had endocervicitis, and a little run down, infected tonsils." He explained that an endocervicitis is an "inflammation of the cervix." As previously indicated the testimony just mentioned was not incorporated in the hypothetical question. No matter how earnestly an attorney may endeavor to incorporate in a hypothetical question all facts which should be embodied in it he may omit inadvertently some item, especially if the preceding evidence has been extensive and has concerned itself with many details or incidents. Where counsel in good faith endeavor to incorporate all of the essential facts into the hypothetical question a general objection that the question does not correctly state the facts is not sufficient: *Hamilton v. Kelsey*, 126 Or. 26 (268 P. 750). But even if the objection could be deemed sufficient and if the circuit court's ruling should be regarded as erroneous, the error was rendered harmless by the defendant's cross-examination of Dr. Bueermann. This physician, whose competency was conceded, stated that a mere cold would not cause an abscess to form in the lungs, and when asked whether "an inflamed cervix might cause an abscess on

the lungs" replied: "No, I don't believe that could. At least, the cases that I know of in literature and familiar with have been reported, no such base has been reported, as far as I know."

The last contention presented by the objection is "that the question calls for an answer from this witness which involves the very thing the jury is called upon to determine." In support of this objection the defendant argues, among other matters "when these doctors testified as to when the aspiration of blood into the lungs took place they were usurping the province of the jury." It is impossible for a witness to usurp the province of the jury by merely expressing an opinion upon the very issue before it. His credibility, the soundness of his judgment, and the existence of the facts recited in the hypothetical question, upon which the opinion is predicated, always remain for the jury's determination, and unless all of them are resolved by the jury favorably to the proponent of the witness the latter's opinion will go for naught. See Wigmore on Evidence (2d Ed.), § 1921. A good illustration of the lack of merit to objections of this type is afforded in the trial of condemnation cases brought under the power of eminent domain. In such proceedings generally the only question presented for the jury's determination is the amount to be paid and yet the opinions of experts are freely received upon that question because they are helpful to the jury. But this much reiterated phrase serves a good purpose. It cautions counsel to confine the hypothetical question to the specific issue upon which an expert's opinion is really admissible and it has a tendency to break up the question into a sufficient number of parts so that the expert's answer will be as serviceable as possible to the jury. In other words the answers come as opinions upon details and

not as conclusions upon the merits of the case. In the present instance the proper practice was followed. The two expert witnesses testified that in their opinion the infected blood from the tonsils, which the answer conceded was insufflated into the plaintiff's lungs, was the cause of the abscesses, and that in their opinion it entered the lungs while the patient was recovering consciousness. In addition one of them testified that the attention of a competent nurse would have reduced the possibility of aspiration of blood into the lungs to the minimum. Since the subject-matter of this opinion evidence consisted of practical knowledge with which a surgeon is much more familiar than the ordinary juror, the inquiries concerned proper material for expert testimony. When the witnesses had thus expressed themselves they had not invaded the province of the jurors. There still remained for the jury's determination the conflict between the testimony of the plaintiff's experts and those produced by the defendant; likewise the opinions of Drs. Phillips and Bueermann would be discarded unless the jurors were impressed with the credibility of these witnesses and were persuaded that their opinions were sound; and finally since the opinions were predicated upon a hypothesis there remained for the jury's determination the question whether a preponderance of the evidence substantiated the hypothesis. Hence, we conclude that this portion of the objection is without merit.

We now come to the next assignments of error which contend that the motions for a nonsuit and for a directed verdict were erroneously denied. The essence of these contentions is that the verdict of the jury was founded upon speculation and conjecture. Preliminary to this argument it is contended that the proof failed to show that the defendant had contracted

for the use of her hospital. However, since substantial evidence supports the jury's finding in favor of the plaintiff upon this issue we are bound by the verdict. Hence we proceed to the problem whether the jury's conclusions that the defendant was negligent, and that such negligence was the proximate cause of plaintiff's illness, are supported only by speculation and conjecture. The attendant supplied by the defendant had been in her employ for several weeks only, had had no experience in any other hospital, and had had no training as a nurse. Her knowledge of how to care for a patient recovering from a tonsil operation had been acquired while she observed seven or eight previous tonsillotomies in defendant's hospital. Besides caring for the plaintiff she also busied herself with the task of cleaning some surgical appliances. The only person present when plaintiff was recovering consciousness was the plaintiff's husband and this attendant. Plaintiff's husband testified that while the plaintiff "was threshing around on the bed," with blood oozing from her mouth, the attendant was absent, and that he sought two or three times to locate her, without success. He swore that on the few occasions when she entered the room she remained for only a moment and did nothing more than to change the bed sheet. This evidence may be untrue, but the jury's favorable reception of it makes it incumbent that we should regard it as the truth. These being the facts we believe that the jury could reasonably infer that this young lady was incompetent to perform nursing service. All witnesses agreed that while the patient is recovering consciousness, a competent nurse should be in attendance and should keep the patient upon her side with her head in such a low position that the blood and mucus will run out of her mouth. Since the plaintiff's husband testi-

fied that the attendant made no effort whatever to keep the plaintiff in such a position it is evident that the jury was warranted in concluding that the defendant was negligent.

But the principal contention advanced by the defendant does not concern itself with the existence of negligence, but with proximate cause. She argues that the proof renders a conclusion equally reasonable that the blood entered the lungs during the course of the operation, when the patient was in charge of her physician, as in the period following it, and further that the evidence failed to show that various other causes, capable of producing lung abscesses, did not cause these. In order to become entitled to a judgment it was necessary for the plaintiff to prove that the negligence of the defendant was the proximate cause of plaintiff's illness; in other words, to establish a causal connection between the two. It is true that no witness saw the aspiration of infected matter into the lungs in the post-operative period, and the formation of the abscesses as the result thereof. Nevertheless, the occurrences in the defendant's hospital, the manner in which nurses ordinarily care for patients recovering consciousness after tonsil operations, and the opinions of the experts, constituted the proper subject-matter of study by the jurors for the purpose of determining whether or not an inference that the alleged negligence caused the abscesses to develop, and, in case they became satisfied that such an inference was reasonable, to next determine whether or not such inference was the only one which could fairly and reasonably be drawn from the facts. We have held that if the facts are as consistent with the appellant's theory as with the respondents, the plaintiff should be nonsuited: *Lippold v. Kidd,* 126 Or. 160 (269 P. 210, 59 A. L. R. 875), and

*Spain v. O.-W. R. & N. Co.*, 78 Or. 355 (153 P. 470, Ann. Cas. 1917E, 1104). It is not sufficient for the plaintiff to show that the negligence of the defendant might have caused the formation of the abscesses, if the evidence indicated an equal probability that they were due to some other cause. It was incumbent upon the plaintiff to show that of the various causes the one for which the defendant was responsible was the most probable (*Lippold v. Kidd,* supra) ; because to require less of the plaintiff would permit the jury to resort to speculation. But we believe, from the evidence which we shall now briefly review, that the proof indicated with reasonable certainty that the cause for which the defendant was responsible was the proximate one of plaintiff's subsequent ill health. The principal contention of the defendant was that the infected material was breathed into the lungs while the plaintiff's physician was removing her tonsils. We have already mentioned in part the testimony which rebutted this contention and which indicated that under the facts of this case it was very unlikely that the blood was drawn into the lungs during the course of the operation. Other possible causes are thus disposed of : It developed during the defendant's cross-examination of Dr. Bueermann that a "septic embolus from other portions of the body" can cause abscesses to develop in the lungs, provided, an infection, as for instance an infected hernia, exists in some other portion of the body and a diffusion of the infected blood causes an embolus to enter a severed vein. But no such infected area existed in the plaintiff's body unless the invested tonsils could be deemed such. Dr. Bueermann, in an explanation too lengthy for quotation, denied that infection from the tonsils could enter the lungs. He added that he knew of no

case where an abscess of the lungs had been caused by a diseased condition of the tonsils. His testimony was not contradicted by any other witness. As we have previously pointed out he testified that an infected cervix had never been known to cause an abscess of the lungs. Further, upon cross-examination, he explained that the infectious organisms of the air, "streptococcus and stophylococcus," are possible causes of abscesses of the lungs only when they are preceded by pneumonia, bronchitis, or a similar illness. In like manner all other possible causes of the lung abscesses were sufficiently negatived so that the defendant's alleged negligence remained as the only cause which could be deemed probable and established with reasonable certainty. Most of this proof was elicited from the plaintiff's witnesses by cross-examination and none of it was contradicted by any other witness. The question now occurs whether the jury's conclusion that the defendant's negligence was the proximate cause of plaintiff's illness is substantiated by facts, or whether it came only as the result of conjecture and speculation. It is difficult to define precisely the boundary line between conjecture and fact-reasoning. The former, according to the Alabama court (*Southern Ry. Co. v. Dickson,* 211 Ala. 481; 100 So. 665), is "simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference." The same court suggests that when the evidence itself makes a selection between the various possible causes and singles out one of them in such a positive manner that there can be said to exist between that one and the defendant's wrongful act the relationship of effect and cause, the conclusion is grounded, not in conjecture but in the proof. The essence of the evidence, in the present case, was that while the plain-

tiff was unconscious, threshing about in the bed, at times sitting upright, she vomited blood, gasped for breath, coughed more or less, and blood oozed from her mouth; during most of this time no attendant was present. It is conceded that infected blood was insufflated into her lungs and that infected blood breathed into the lungs is a cause of lung abscesses. Coughing and struggling to obtain air in the post-operative period is regarded by medical men as persuasive evidence that at those times blood is entering the bronchial tubes. While as previously suggested the burden always rests upon the plaintiff to remove the cause from the realm of speculation and give it a solid foundation upon facts (45 C. J., Negligence, 1267, § 835, cites an extensive collection of cases; Abbott's Trial Evidence (3d Ed.) 1554) we believe that the proof has accomplished the required result. Such being our conclusion it follows that the circuit court did not err when it denied the motions for a nonsuit and for a directed verdict.

The next four assignments of error are predicated upon instructions given to the jury, or upon requested instructions which the court declined to allow. We have carefully studied the instructions given by the court and believe that they outlined with sufficient fullness all of the principles of law applicable to this action, which were necessary for the jury's guidance. One of the three requested instructions, which the court declined to give, was intended to convey to the jury information denominated by this requested instruction "common knowledge" concerning the duties of a nurse. This "common knowledge" was in part contrary to the proof, and further would have intimated to the jury that the defendant was not liable for the actions of her attendant. The court did not err in declining to sub-

scribe to this requested instruction. The next requested instruction, which the court declined to give, recited: "No one is required to guard against * * * that which under the circumstances is not likely to happen * * * and if you find from the evidence that the defendant had no reason to anticipate that abscesses would form in plaintiff's lungs, your verdict should be for the defendant." The evidence submitted by the plaintiff's physicians that abscesses would be likely to form in a patient's lungs as the result of insufflation of infected blood was not contradicted by any one. In fact, all of the physicians and nurses, of whom inquiries were made concerning the care to be exercised by a nurse and a physician, spoke of the danger attendant upon the aspiration of blood. Some of the defendant's witnesses were inclined to criticize the use of a general anaesthetic, in lieu of a local one, on account of the danger of inhaling blood which is attendant upon the use of a general anaesthetic. Such being the proof the requested instruction was properly denied as inapplicable to this case. The third requested instruction concerned itself with the measure of damages. Since this subject was properly and fully covered by instructions given, the court did not err when it refused this request. The instruction given and criticized in one of these four assignments of error, in reviewing the pleadings, stated: "The plaintiff alleges and has offered evidence to prove." The defendant argues that in using this language the court commented upon the evidence. We believe that this contention is without merit. Since the court had already denied motions for a nonsuit and for a directed verdict, which were argued at length, it must have been apparent to any juror possessed of even a modicum of common reasoning power that the court believed that the plaintiff had made out a prima

facie case. In addition, the instructions were preceded with a statement that the judge possessed no authority to comment upon the evidence nor to indicate to the jury his conclusions in regard to it. The remaining criticisms of this instruction we have carefully considered but believe they possess no merit.

The last assignment of error is founded upon the order of the circuit court denying defendant's motion for a new trial, which was based upon newly discovered evidence. During the trial defendant's counsel asked Dr. Anderson, who was plaintiff's surgeon, whether he had ever been convicted of a crime. He replied in the negative. After the trial defendant discovered that Dr. Anderson had been convicted of a misdemeanor September 21, 1926, in the state of California. The allowance of a motion for a new trial is a matter largely intrusted to the discretion of the circuit court. Generally newly discovered evidence, which will serve only the purpose of impeachment, is not deemed a sufficient reason for allowing a new trial: *State v. Hill,* 39 Or. 90 (65 P. 518) ; *State v. Gardner,* 33 Or. 149 (54 P. 809) ; *Territory v. Latshaw,* 1 Or. 146 ; (20 R. C. L. 294 and 46 C. J. 280). Since we are not persuaded that the circuit court abused its discretion in denying the motion for a new trial we do not believe that this assignment of error possesses merit.

It follows from the foregoing that the judgment of the circuit court will be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.