Argued March 16, affirmed May 24, 1961

# SCHNITZER STEEL PRODUCTS CO. *v.* DULIEN STEEL PRODUCTS, INC.

362 P. 2d 362

*Jack H. Dunn,* Portland, argued the cause for appellant. With him on the briefs were Richard A.

Van Hoomissen and Maguire, Shields, Morrison, Bailey & Kester, Portland.

*John H. Higgins*, Portland, argued the cause for respondent. With him on the brief were Robert J. Miller and Black, Kendall & Tremaine, Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

SLOAN, J.

An action for breach of contract. Plaintiff, as seller, recovered a verdict and judgment for loss alleged to have been sustained when defendant repudiated a contract requiring the latter to buy scrap metal from plaintiff. Defendant appeals.

In October, 1955, the parties entered into the contract. It was evidenced by a written memorandum. The contract required defendant to buy about 9000 tons of scrap metal; plaintiff was required to deliver the metal on board vessels in Portland on the order of defendant. The entire amount specified was to have been delivered and paid for by the end of January, 1956. The scrap was to be of three grades commonly known to the trade—No. 1 heavy melting steel, No. 2 heavy melting steel and No. 2 scrap steel bales—in approximate equal proportions. The price to be paid was $52.50 per ton, f.o.b. boat in Portland. The price was an average or composite price for the three grades. The crux of this case is found in this paragraph of the contract:

"In the event the Buyer fails to take delivery of the specified material Seller can call on him for the balance of the moneys due for the material which is in his possession, or Seller can go on the open market and dispose of this material and hold the Buyer responsible for any and all losses."

Prior to July 2, 1956, defendant had ordered and plaintiff had delivered about two-thirds of the scrap contracted for. And prior to July 2, 1956, plaintiff had made frequent demand upon defendant to take the balance. In the spring of 1956 the market declined. On the date mentioned plaintiff, by letter, notified defendant that if defendant failed to pay for the goods and provide shipping orders within one week plaintiff would exercise its rights under the contract and sell the material and charge defendant with any loss sustained. In response, defendant claimed that its president, Mr. Dulien, went to the storage yard of plaintiff on July 4, 1956, and inspected the material. Mr. Dulien then sent plaintiff a wire and confirming letter that the material inspected did not meet agreed standards of quality and he was repudiating the contract. Plaintiff then sold for an alleged loss of $38,747.70. This was the amount of the verdict.

The record shows that these parties had been engaged in similar transactions for several years. It is also evident that the form and terms of the contract were standard to the trade. That is, with the exception of variations in price. The inference, therefore, can be drawn that the parties to the agreement did not intend to "modify the pattern" of contracts common to the industry. Llewellyn, Cases and Materials on The Law of Sales, 1930, p 4. The parties knew what was expected of each.

■ The court instructed the jury, as a matter of law, that defendant had breached the contract. Exception was taken to the instruction. The only testimony presented by defendant in attempt to show an excuse for nonperformance was that of Mr. Dulien that he had inspected the goods in the quiet of the July 4 holiday and found them below standards. For our purposes,

of course, we must accept his testimony as true. However, he also testified that the quality of the goods inspected did not materially differ from that already delivered. The goods that had been delivered were of acceptable quality. However, he said he was fearful that when actual delivery time arrived the goods delivered might not be of that same quality. This was pure speculation. Furthermore, if, on delivery, the goods had not met quality standards, defendant could have rejected them at that time. By the contract he was entitled to inspection when the goods left the yard. Taking the testimony of defendant's president as true, it still did not provide cause to repudiate the contract. The court did not err in this regard.

Mr. Morris Schnitzer, one of the responsible officers of plaintiff corporation, was permitted to testify that in the resale transaction plaintiff had sustained a loss in the amount of $38,747. At the trial objection was made that this was not the best evidence. The objection was based on the theory that a contract, in evidence, by which plaintiff had sold most of the material not taken by defendant established the price and, therefore, the loss that plaintiff had received. On appeal defendant places little reliance upon that theory and now contends that the testimony was opinion evidence as to damages and therefore inadmissible. *Smith v. Pallay et al*, 1929, 130 Or 282, 288, 279 P 279. That case and others establish the rule that a witness may not express an opinion as to the amount of damages suffered by an injured party.

█ Plaintiff contends, and we think properly so, that it is too late to raise in this court for the first time the objection that the answer given was an opinion. In the trial of the case plaintiff attempted to prove actual loss rather than a measure of damages which

would have been the difference between the contract price and market value. In addition to the testimony, which is the subject of this assignment, there was other evidence admitted which tended to prove that plaintiff's loss or damage exceeded that difference. In fact, there was some evidence that the most of the material remaining undelivered when defendant repudiated the contract had no market value. This was the scrap classified as No. 2 bales. It is clear from the evidence that this class of material could rarely be sold except with an equal amount of the better grades of scrap metal. All of this evidence had also been subjected to the same objection—that it was not the best evidence. Plaintiff was attempting to show actual loss, defendant was attempting to limit plaintiff to the sales price set in the contract by which plaintiff resold some of the goods in question. During the trial the real struggle between the parties arose out of this difference of opinion as to the measure of damages. In respect to this aspect of the case the court's attention was directed exclusively and continuously to that particular issue. Consequently, when the challenged evidence was offered both plaintiff and the court were misled by the insistence that this was not the best evidence. Defendant did not mention opinion. If that objection had been made the court might have refused to admit it or plaintiff might have attempted to prove the computation by other means. The failure to make the objection for the reason now complained of deprived both trial court and plaintiff of any opportunity to remedy the situation if, in fact, the answer was inadmissible. Under the circumstances peculiar to this case it is not one in which it can be said that the evidence was so clearly objectionable as an opinion that a general or incorrect ground of objection would

suffice. *Hryciuk v. Robinson*, 1958, 213 Or 542, 569, 326 P2d 424; *Hamilton v. Kelsey*, 1928, 126 Or 26, 40, 268 P 750. In the setting in which the challenged evidence was presented there was nothing to flag the trial judge's attention that it was so obviously an opinion. He could not be said to have committed error under the circumstances presented here.

■ Plaintiff had plead and its contract permitted it to recover "any and all losses" it sustained by reason of defendant's default. There were "special circumstances showing proximate damages" in greater amount than the difference between contract and market price. ORS 75.670; *Nelson Equipment Co. v. Harner*, 1951, 191 Or 359, 371, 230 P2d 188, 24 ALR2d 999. It was proper for plaintiff to attempt to prove its actual loss.

Two other assignments have been considered but we find no error in either. One was directed at an exhibit which contained evidence of market value. The court specifically admitted the evidence in this regard to show that plaintiff's resale price was fair. The other assignment complained of the failure of the court to give a requested instruction. The same matter was otherwise given by the court.

Judgment affirmed.